Filed June 18, 1896.

No. 1,812.

## German Fire Insurance Co. *v.* Columbia Encaustic Tile Co.

INSURANCE.—*Pleading.*—*Departure.*—A reply setting up a custom existing in the office of an insurance agent, of a clerk of such agent, in accepting risks and issuing policies for defendant insurance company, with its knowledge and consent, and that the policy in suit was issued in that manner, and that the defendant company, with full knowledge of all the facts, ratified the act of the agent by accepting the premium, is not a departure from the complaint which declared upon the policy.

SAME.—*Agency.*—*General Agent.*—An agent holding a commission from an insurance company, authorizing him to take risks generally, without placing any limitation thereon, either as to the kind of risks he is authorized to take, or the territory within which they may be, is a general and not a special agent.

SAME.—*Limitation of Power of Agent.*—A clause in the commission of an insurance agent, providing that he shall be "subject to the rules and regulations of the company, and such instructions as may from time to time be given him," does not impose upon one dealing with such agent the duty of ascertaining the authority of such agent to issue a policy on an extra hazardous risk, situated in a place other than the town in which the agent's office is situated.

German Fire Insurance Co. *v.* Columbia Encaustic Tile Co.

SAME.—*Agent's Clerk.*—An insurance company is bound by the acts of a clerk of its agent in accepting risks and issuing policies, and one dealing with the clerk as such, is not bound to inquire into his authority to perform such acts.

SAME.—*Execution of Policy.—Evidence.*—Evidence of the duties of a clerk in the office of a general insurance agent, and his custom in passing upon applications for insurance, signing the name of the agent to the policies and reports, is competent to show the execution of the policy in suit, which has been issued by such clerk.

SAME.—*Execution of Policy.—Evidence.*—Proofs of loss, and the correspondence between the general agent, from whose office the policy was issued, are admissible in evidence in an action on a fire insurance policy, the execution of which is denied.

SAME.—*Liability of Company.—Repudiation of Contract.*—An insurance company cannot relieve itself of liability by repudiating a risk after a loss has occurred.

INSTRUCTION TO JURY.—*Incomplete.*—When an instruction is correct as far as it goes, the party who desires a more complete statement of the law, must ask for it and meet with a refusal before he can complain of the court's action.

SAME.—*Refusal to Give Instructions.*—Error cannot be predicated upon the refusal to give instructions, unless the record discloses affirmatively that such instructions were tendered to the court before the commencement of the argument.

From the Marion Superior Court.

*S. M. Shepard,* for appellant.

*Carter & Brown,* for appellee.

REINHARD, J.—This case is here for the second time. *Germania Fire Ins. Co.* v. *Columbia Encaustic Tile Co.,* 11 Ind. App. 385. The action was on a policy of fire insurance, upon which the appellee recovered a judgment.

The first error relied upon by appellant's counsel is the overruling of the demurrer to the second paragraph of the reply. The complaint is in three paragraphs. The first and second declare upon the policy, and the third is on an oral contract, or agreement, to insure. This reply is addressed to the 4th, 6th, and 7th paragraphs of the answer. The 4th paragraph of

the answer is a denial under oath of the execution of the policy. The 6th paragraph of answer alleges, among other things, that the property insured was not situate in a town adjacent to the city of Indianapolis; that one Henry Coe, appellant's agent at Indianapolis, who, it is alleged, issued the policy in suit, was not authorized to insure any property outside of Marion county, without the special permission of appellant; that his authority was in writing, and he was thereby limited and restricted, both as to territory and classes of risks, and that the property insured was an extra hazardous risk; that said Coe did not countersign such policy nor accept such risk, nor was any special permission of the company applied for or given; that appellant had no notice of the issuance of the said policy until after the fire, and when said notice was received appellant promptly repudiated the policy, and immediately gave notice to said Coe of its action; that it never, until after this suit was instituted in this cause, had any full information of the manner in which the policy sued on was obtained.

The seventh paragraph of answer is much like the sixth, except that the provisions in the policy, which require the person acting as agent to have authority in writing, are copied into it.

The second paragraph of reply admits that Coe was the legally constituted and appointed agent of appellant, and then it sets up certain alleged habits and customs, obtaining in the office of said Coe, touching the action of one Seyfried, a clerk of said Coe, in accepting risks and issuing policies for appellant, with the knowledge and consent of said appellant; and that the policy in suit was so issued by said Coe. Then follows an averment that the appellant, with a full knowledge of all the facts, ratified the act of said

agent by an acceptance of the money for the premium, and has waived the provisions of the said policy relative to said agency.

The objection made to this paragraph of reply is: (1) that it is a departure; (2) that "it seeks to interpose an alleged custom and habit in the office of Coe to vary the terms of a written contract; does not allege that the plaintiff had any knowledge of such pretended custom and habit, or that it relied upon such custom or habit." (3) "The paragraph purports to answer the sixth and seventh paragraphs upon the point that the agency of Coe is a limited and restricted one, both as to territory and classes of risks; and that appellee's risk was extra-hazardous and in the proscribed class, and was a special risk located outside of the city of Indianapolis."

In support of the proposition that the reply under consideration is a departure, it is insisted that, while it admits the agency, "it seeks to avoid the positions of the answers by alleging a custom of Coe's office, and, therefore, it is such a change of base as to constitute a departure, and brings the appellee within the meshes of the rules laid down by the Supreme Court in a number of cases," citing *Will* v. *Whitney*, 15 Ind. 194; *Burtch* v. *State, ex rel.*, 17 Ind. 506; *McAvoy* v. *Wright*, 25 Ind. 22; *Bearss* v. *Montgomery*, 46 Ind. 544.

We are unable to agree with appellant's learned counsel in the position assumed respecting this pleading. A departure in a pleading is a desertion of the ground which the pleader occupied in his last antecedent pleading, and a resort to another ground. Stephen, Pl., 9 Am. ed., p. 410. Under the code, when any paragraph of the answer contains new matter, the plaintiff may reply the general denial; and may also, in separate paragraphs, reply any new matter which supports the complaint and avoids the new

matter in the answer. R. S. 1894, section 360 (R. S. 1881, section 357).

If the reply asserts some right, not counted upon in the complaint, it is a departure. It is a shifting of ground from that occupied in the complaint, and upon which the right to recover is based. *Teal* v. *Langsdale*, 78 Ind. 339.

Measured by these definitions, the reply is not a departure. We do not construe the reply, as appellant's counsel does, to mean that it seeks to avoid the answers by relying upon a custom in Coe's office. As we read this pleading, it relies principally upon a ratification, and this is proper to set up in reply. *Heady* v. *Boden*, 4 Ind. App. 475. The averments concerning the custom referred to are but preliminary to the allegations as to ratification, and constitute the ground work, or basis upon which the reply of ratification is founded. The complaint declares upon a policy. The answers allege that the appellant never executed it, and that the agent, or person acting as such, who, it is claimed, issued the policy, had no authority to do so. The reply responds that it may be true that the appellant did not, in the first instance, execute the policy through a duly organized agent (showing just what was done in connection with the attempted execution); but, granting that the agent had no authority, and that, therefore, his acts did not amount to an execution of the policy, yet, when the facts were brought home to the appellant, it ratified the same by accepting the premium money and thereby adopted the agent's acts as its own. This is in the nature of a confession and avoidance of the facts set up in the answers, and as such it is sufficient. An examination of the cases cited by appellant's counsel convinces us that they do not sustain his position.

We are not unmindful of the fact that one of the

paragraphs of the complaint counts upon an oral contract to insure, and not upon the policy. If the reply may be said to constitute a departure from this paragraph of complaint, the appellant could not have been harmed by the ruling upon the demurrer to the reply, for the reason that the court expressly withdrew this paragraph from the jury.

But it is further urged that while the paragraph of reply under consideration purports to meet all the material averments of the 4th, 6th, and 7th paragraphs of answer, it really fails to cover the points made in the 6th and 7th paragraphs as to the limitations and restrictions of the agent's authority, both as to territory and classes of risks.

We shall not take issue with counsel upon the proposition that a reply which is not good as to all the paragraphs of answer it attempts to meet, will be held insufficient. *Fordice* v. *Scribner*, 108 Ind. 85. If we are correct in the view that the gist of the reply is the averment of ratification, it must be obvious that the objection we are now considering is likewise unavailing. If the appellant in fact ratified the contract contained in the policy, by accepting the premium-money thereon, such ratification completely estops the appellant from questioning the validity of such contract.

Another error assigned is the overruling of appellant's motion for a new trial. It is insisted, on behalf of appellant, that the evidence is insufficient to sustain the verdict.

Under the issues, it devolved upon the appellee to prove either that the policy of insurance in suit was duly issued, or, if not, that the contract therein contained was subsequently ratified, as pleaded in the reply. If it proved either of these propositions, together with the fact that it had a loss under the

policy, and fully complied with the terms thereof in all material respects, it was entitled to recover, and the judgment of the lower court upon the verdict cannot be disturbed on the ground here relied upon.

The evidence tends to show that McGilliard & Dark were insurance brokers and agents in the city of Indianapolis, who had arranged for insurance for the appellee upon its property at Anderson, and that as the appellee desired an additional amount of insurance, which McGilliard & Dark could not place in any of their companies, they applied to one Henry Coe, the agent of the appellant, in Indianapolis, to write $4,500.00 additional in the appellant company. One Robert Shingler worked in the office of McGilliard & Dark, as clerk and agent, and when the application for this additional insurance reached the office he telephoned to the office of Henry Coe, to ascertain if he would place the insurance. The call at the telephone was answered by Henry Seyfried, the principal clerk in Coe's office, who turned from the telephone to ask Coe if he would write the insurance for the appellee, and Coe answered that he could do so, which was communicated to Shingler, who immediately prepared the necessary papers, and sent to Coe's office an application for $2,000.00, and a policy for that amount, in the appellant company, was made out in the latter office and sent to the office of McGilliard & Dark. Among the papers prepared by Shingler were three "slips," each containing a description of the property to be insured, one of which was to be attached to the policy, one to be retained by the insuring office, and one to be sent to the home office of the company. These papers were sent to Coe's office by a messenger at about 10 o'clock in the forenoon, and in the afternoon of the same day the policy was sent over from Coe's office to the office of McGilliard & Dark. The

policy was dated back to the 8th of March, although not sent to the office till the 11th of March, the reason being that the order from the appellee to McGilliard & Dark for the insurance was dated March 8, 1892, and the other policies issued by McGilliard & Dark were of that date, and it was desired to have them all mature at the same time. Shingler, when he received the policy, entered it upon the records in McGilliard & Dark's office, and enclosed it with a letter to the appellee the same evening. On March 24, 1892, there came to the office of A. T. Allen (who is the fire inspector in the city of Indianapolis for the insurance companies belonging to a certain compact, and whose duty it is to inspect buildings, fix rates of insurance and examine the daily reports that go to the companies, which are sent to him by the agencies, and by him verified as to rate and form, and if found correct entered upon a book kept for that purpose, stamped with a stamp by him, and sent to the proper company) a "Daily Report," purporting to have been issued from the Henry Coe agency, and showing that a policy similar to that set forth in the complaint was issued by the German Insurance Company, to the Columbia Encaustic Tile Company for $2,000.00, and having the signature: "Henry Coe, agent." This report was mailed to the appellee, as also a "Monthly Report," which passed through the hands of said Allen, as fire inspector, and shows the issuing of the same policy. The premium on the policy was duly paid to McGilliard & Dark, on the 15th of March, 1892, the policy having been received by appellee on the 12th of March, the fire having occurred on the previous night. A letter, dated March 15, 1892, was written by the appellee's secretary to Coe, in which it was insisted that Coe had no authority to bind the company on any outside risks prohibited in the com-

pany's list, and informing him that he would have to "stand the consequences," as the company would have promptly refused the same if submitted to it, and rebuking him for delaying his "daily report" from the 8th of March to the 24th of the same month. The letter closed as follows:

"We were unaware of your action, and you are responsible to the assured if you have issued a policy to them without our consent." It was agreed that the true date of this letter was March 25, instead of March 15.

Coe answered the letter, endeavoring to explain matters, and stating, among other things, that "the risk in question was written either on Saturday afternoon of the 12th, or Monday, the 14th; it was dated on the 8th to correspond with the other policies in the risk." He also stated: "If you have any prohibited list which included Encaustic Tile Works, I have never seen one." Coe did not deny the writing and issuing of the policy in this letter, nor did appellant's secretary deny the company's liability.

Coe had a written commission from the appellee, authorizing him "to receive applications for insurance, moneys for premiums, and to countersign, issue and renew policies of insurance signed by the president, attested by the secretary of the German Fire Insurance Company, subject to the rules and regulations of said company, and such instructions as may from time to time to be given by its officers." It is claimed that a list of prohibited risks was furnished Coe, but this was not attached to the commission, and formed no part of it. The list was not introduced in evidence, but it was shown by letters that among the prohibited risks was the following: "All specials located outside of your city are strictly prohibited." McGilliard & Dark's office and Coe's office had mutual

running accounts with each other, of premiums on policies issued in the course of their business transactions as brokers, which accounts were settled from time to time by the payment of balances. In this way the premium on the appellee's policy was paid by McGilliard & Dark to Coe, and subsequently by the appellee to McGilliard & Dark. In the monthly account current for March, 1892, rendered by Coe's office to the appellant, the premium on appellee's policy, amounting to $25.00, was included, and it was paid to appellant by the check of Henry Coe, dated May 20, 1892, with a balance of $212.31, of which it was a part. On August 16, 1892, appellant's secretary wrote to Coe, calling his attention to the fact that he had included, in his March report, a premium of $25.00 on policy issued to the Columbia Encaustic Tile Company, and claiming that the risk in question had never been approved by the company, and asking him to furnish a correct report for the month of March, or charge the full premium in his next report; and with this request Coe complied by charging the company and crediting himself with the $25.00. After that, Coe never tendered the money back to the appellant or the assured, but paid it into the hands of the clerk of the court below, when the suit was instituted, January 4, 1893. Two other risks outside of the city of Indianapolis, one at Anderson and one at Noblesville, had been written by Coe in this company and accepted by it. The appellee had no knowledge of any restriction or limitation on the powers of Henry Coe as agent of the appellant. In response to a letter sent by Carter & Brown, attorneys for appellee, to the appellant, the secretary wrote, referring them to Henry Coe, of Indianapolis, who, they said, would "attend to the matter and satisfy the assured," as he had promised the company repeatedly, and that the

latter had expected that he had done so before the writing of the letter. There was also evidence to show that Coe was not present when the policy was signed and delivered; that he had never authorized the signing of his name to the same, but that it was signed by Seyfried, the chief clerk in his office, and that Coe did not know how the policy was issued, nor had he seen the daily reports, or the monthly reports, sent from his office. Seyfried's duties were to attend to the details of the office, writing policies, keeping the books, writing daily reports and forwarding them to the manager. Seyfried had been signing Coe's name to policies issued from Coe's office prior to the signing of the policy in suit, to which no objection was made by Coe. Seyfried also habitually signed Coe's name to the daily reports with the latter's consent; he passed upon and accepted risks in Coe's absence, and had authority to do so. There was evidence to show that it was customary for Seyfried to sign Coe's name to policies, and that Coe permitted the same to be done without objecting thereto.

We are of opinion that the evidence amply warranted a finding that the policy was executed by the appellant, to say nothing of the acts of appellant's agents, which the appellee relies upon to establish a ratification. It is true, that the policy shows that "in any matter relating to this insurance no person, unless duly authorized in writing, shall be deemed the agent of this company." If it be granted, for the sake of the argument, that this clause requires the applicant for insurance to ascertain whether or not the person assuming to act as agent is supplied with the proper commission, and what it contains, it still does not follow that any limitation, such as the appellee was bound to take cognizance of, was placed upon the authority of Henry Coe. An agent holding

a commission from an insurance company, authorizing him to take risks generally, without placing any limitation thereon, either as to the kinds of risks he is authorized to take, or the territory within which they may be, is a general and not a special agent. The commission which Coe held was general in its terms, and, as we have seen, conferred authority upon him without limit, "to receive applications for insurance, moneys for premiums, and to countersign, issue and renew policies of insurance signed by the president and attested by the secretary." That he should be confined in his transactions to insurance upon property in the city of Indianapolis, is nowhere indicated, nor is the fact that he is designated in the introductory portion of the commission as "Henry Coe, of Indianapolis," indicative of the fact that his authority is limited to Indianapolis. Our opinion is that Coe was a general and not a special agent.

Appellant's counsel strenuously contends that because of the clause in the commission, that he shall be "subject to the rules and regulations of the company, and such instructions as may from time to time be given him," applicants for insurance who dealt with Coe, were put upon their inquiry, and it became their duty, at their peril, to know what were the "rules and regulations of the company," and what were the "instructions from time to time given him."

Counsel says:

"There was clearly an object in inserting such provision plainly and in the body of the contract, or it would not have been inserted. The only object that could possibly be attained would be to give notice to the person accepting such contract that it will not be a contract, unless the party pretending to represent the appellant has authority in writing, and, therefore suggests an examination to determine

whether there are any restrictions or limitations in such authority. It is a notice for the common protection of the insurer and insured. It is the exact opposition of a secret instruction or order existing between the insurer and its agent, because it is a caution addressed to the person about to accept such contract, and it is respectfully suggested that there could be no surer or fairer way of imparting such caution than by inserting it in the face of the contract about to be entered into. There is no occasion for discussing the question of secret arrangements between principal and agent, for it is conceded that secret arrangements not communicated to others are not binding upon them."

The appellant's learned counsel thus concedes that any secret instructions from the company to Coe, which had not been communicated to appellee, were not binding upon it. But what can the instructions given the agent "from time to time" be but "secret arrangements" between the company and its agent? Surely it cannot be the law that when the assured receives his policy, reads it over and discovers in the great mass of finely printed matter the clause referred to, it devolves upon him to demand of the agent that the latter show to him the various letters he may have received from the company "from time to time," in order to ascertain what his latest instructions are. Such a requirement would entail upon the assured a burden which is sanctioned by neither law nor good conscience. The instructions are fairly within the term "secret arrangements," and the assured cannot be bound, by them, unless it be shown that he had been given notice thereof. *Kerlin* v. *Natl. Accident Assn.*, 8 Ind. App. 628 (652). We fully agree with appellee's counsel, that Coe would have been equally subject to the rules and regulations of the company, and the instruc-

tions from time to time transmitted to him, had there been no such a provision in his commission. The fact that it was there inserted did not change his duties in this respect, nor did it change the relations sustained to him by the public, or by those who dealt with him. These were bound to know, even in the absence of any commission, that Coe was governed by the rules and regulations of the company that employed him, and that he was subject to its instructions. But they were not bound to know what these rules and regulations and instructions were, unless these had been brought to their attention by the company or its agents. This rule is not applicable to insurance contracts alone, but it applies to all contracts. *Commercial, etc., Ins. Co.* v. *State, ex rel.,* 113 Ind. 331, 337.

Nor can we say that the policy was invalid because Coe's name was signed by Seyfried, the chief clerk of his office. The jury was not without evidence from which it had the right to conclude that Seyfried was authorized to sign Coe's name to policies. There was also evidence from which the jury could determine that the company knew, or should have known, that Seyfried was employed by Coe, and passed upon applications, and signed his name, and was in the habit of acting for him in such matters. The company was, therefore, responsible, not only for the acts of its commissioned agent, within the scope of the authority expressly conferred by the commission, but also for the acts of Seyfried in connection with the business of insurance in which he was engaged. *Indiana Ins. Co.* v. *Hartwell,* 123 Ind. 177.

In the case just cited, the Supreme Court quote with approval the following language from the case of *Duluth Nat. Bank* v. *Knoxville Fire Ins. Co.,* 85 Tenn. 76; " 'Not only is the insurer responsible for the acts of its

agent, within the scope of his agency, but also for the
the acts of its agent's clerks, or any person to whom
he delegates authority to discharge his functions for
him. Of course the act must be done by some person
authorized expressly or impliedly by the agent, and
under such circumstances that the insurer knew, or
ought to have known, that other persons would be em-
ployed by, and to act for, the agent.' "

What has just been said is equally pertinent to the
point made by appellant's counsel, that because the
policy was procured through the agency of McGilliard
& Dark, insurance brokers, said McGilliard & Dark
were the agents of appellee, and were bound to
ascertain whether Seyfried had authority in writing
to act for it, and that as McGilliard & Dark knew, or
had reason to know, that Coe's name was signed to the
policy by Seyfried, the appellee was bound by such
knowledge, said McGilliard & Dark being, in law,
agents of appellee. The case last above cited holds
otherwise.

The appellant's counsel urges numerous errors in
the admission and rejection of testimony. The evi-
dence relating to the duties of Seyfried in Coe's of-
fice, his custom in passing upon applications for in-
surance, signing Coe's name to policies and reports,
etc., was clearly competent. This was so, we think,
independent of the averments in the second para-
graph of the reply. It tended to prove the execution
of the policy, which was denied under oath. It was
a part of the appellee's original case, and was emi-
nently proper. Nor was it error to admit in evidence
the policy in suit, the proof of loss, and the correspond-
ence between Coe and the appellant. The "list of
risks" kept in Coe's office, being a part of his private
instructions from the appellant, was properly rejected
by the court. It could not bind the appellee, in the

absence of any proof of knowledge on its part as to the existence of such list, or other instructions, when the insurance was taken out.

The court committed no reversible error in excluding some correspondence offered by appellant, alleged to have occurred between its secretary and Coe, after the fire. The fact that appellant repudiated the risk after the loss would not relieve it from liability. The correspondence was in the nature of a self-serving declaration. It was properly excluded.

There was no irreconcilable conflict between the general verdict and the answers of the jury to the interrogatories, and the court consequently did not err in overruling the appellant's motion for judgment, notwithstanding the general verdict.

The instructions given by the court, of which the appellant complains, are in full harmony with our view of the law governing this case. If, in some particulars they were not as full as might be desired under the issues, the appellant should have sought to amplify them by instructions proposed by its counsel and submitted to the court with a request that they be given. When an instruction is correct as far as it goes, the party who desires a more complete statement of the law, must ask for it and meet with a refusal before he can complain of the court's action. *Hindman* v. *Timme*, 8 Ind. App. 416.

A number of instructions requested by appellant's counsel, were refused, and the refusal is properly assigned in the motion for a new trial. The appellee's counsel makes the point that the record fails to show that these requests were made prior to the beginning of the argument, and in this they are borne out by the record. Error cannot be predicated upon the refusal to give instructions, unless the record discloses affirmatively that they were tendered opportunely,

which means before the commencement of the argument. *Kackley* v. *Evansville, etc., R. R. Co.*, 7 Ind. App. 169; Elliott App. Proced., sections 731, 733, 735, 736, and cases cited.

"One complaining of a ruling," say the Supreme Court, "must, in order to secure a reversal, affirmatively show that he placed himself in an attitude to rightfully ask that which the court refused him. If this be not done, the presumption of regularity, which always attends the proceedings of the trial court in the absence of a contrary showing, will require the appellate court to assume that the party did not do that which the law required him to do in order to entitle him to the ruling asked." *Puett* v. *Beard*, 86 Ind. 104, 107.

We have disposed of all the questions presented for our determination, and are of opinion that no reversible error is shown to have been committed.

Judgment affirmed.

Filed March 3, 1896 ; petition for rehearing overruled June 18, '96.