(December 13, 1897.)

## EASLEY v. NEW ZEALAND INSURANCE COMPANY.

[51 Pac. 418.]

INSURANCE—APPLICATION—RETURN OF APPLICATION AND PREMIUM.— E. made application for insurance upon certain buildings, receiving from the agent a receipt, which is in the following words: "Received of R. A. Easly an application for insurance by the New Zealand Insurance Company of Aukland, New Zealand, subject to approval by C. H. Colby, Manager, against fire and lightning on property to the amount of $500, all for the term of one year, and one note payable on the first day of August, 1893, and on the —— day of ——, 189—, respectively; also fifteen dollars in cash, all to be returned if policy is not issued. Dated June 22, 1893. Signed, J. A. Hays, agent. If policy is not received within thirty days from date of this receipt, report that fact to C. H. Colby, Manager, Masonic Temple, Denver, Colorado." On the 20th of July, 1893, said manager notified its agent by letter that the company declined the risk, returning to him the application and premium. Plaintiff testified that he never received either the application or the premium; nor never notified the manager of the nonreceipt of the policy, The property was destroyed by fire on August 28, 1893. *Held*, that the nonreceipt by plaintiff of the application and the premium did not convert the receipt given by the agent, into a contract of insurance.

(Syllabus by the court.)

APPEAL from District Court, Ada County.

S. H. Hays and Henry Z. Johnson, for Appellant.

The evidence was insufficient to justify the verdict. There is no evidence that respondent's application for insurance was ever accepted by appellant. On the contrary, the evidence shows that the application was rejected the day it was received. At the time respondent made application for insurance he took and accepted from the soliciting agent a receipt stating that said "application for insurance" was to be "subject to approval by C. H. Colby, manager," and that the money and premium note were "all to be returned if policy is not issued." C. H. Colby, appellant's manager for Colorado, Utah and Idaho, with headquarters at Denver, upon receipt of respondent's application, immediately, on the date the application was received, to wit, July 20, 1893, notified respondent "by letter," wherein he "declined to write" the insurance because the "hazard was too great," that "he preferred not to write it." Respondent denies that he "received any such letter," but as Colby inclosed the letter in a "return envelope" and "paid the postage thereon," and deposited the same in "the United States mail box in the Masonic Temple" in Denver, and "never received it back," the presumption is that respondent received it in due course of mail. (*Dunlop v. United States,* 165 U. S. 486, 17 Sup. Ct. Rep. 375.) An application for insurance is not a contract, but a mere offer or proposal which may be rejected. The receipt reciting that respondent had made "application for insurance," that such application was "subject to approval," and that premium was "to be returned if policy is not issued," was a mere proposal to appellant, that was to become a contract only when accepted. The contract, to have been binding from the date of the application, must have been a completed contract; one that left nothing to be done, nothing to be referred, nothing to be passed upon or determined before it should take effect. (*Alabama Gold Life Ins. Co. v. Mayes,* 61 Ala. 163; *Haden v. Farmers' etc. Fire Assn.,* 80 Va. 683, 691, 693; *Pickett v. German Fire Ins. Co.,* 39 Kan. 697, 18 Pac. 903; *O'Brien v. New Zealand Ins. Co.,* 108 Cal. 227, 41 Pac. 298; *Winchell v. Iowa*

*State Ins. Co.,* 103 Iowa, 180, 72 N. W. 503; *Insurance Co. v. Johnson,* 23 Pa. St. 72, 75.)

A. A. Fraser and Texas Angel, for Respondent.

Admitting that said Hays was not the agent of the company, or that he exceeded his authority, the company accepted the benefit of his acts by receiving the note and money paid for premium, and still retains the same and is now, as a matter of law, estopped to deny liability. (Mechem on Agency, secs. 148, 153, 155; *Gray v. National Ben. Assn.,* 111 Ind. 531, 11 N. E. 477; *German Fire Ins. Co. v. Columbia Encaustic Tile Co.,* 15 Ind. App. 623, 43 N. E. 41; *Myers v. New York Mut. Life Ins. Co.,* 32 Hun, 321; *Southern Life Ins. Co. v. McCain,* 96 U. S. 84.) We admit that an application for insurance made to a mere soliciting agent, whose authority is limited to taking applications and forwarding them to the company to be finally acted upon for approval or rejection, is only a proposal and not a contract, but in this case we contend that the application was approved and accepted by the company and became a binding contract of insurance prior to the loss by fire, and the jury so found by special verdict.

HUSTON, J.—On the twenty-second day of June, 1893, one J. A. Hays, representing the defendant company, received from the plaintiff an application for insurance on certain property situate in the town of Glenn's Ferry, Elmore county, Idaho. No policy of insurance was at the time issued, but the agent gave to the plaintiff a receipt in the following words:

"Received of R. A. Easley an application for insurance by the New Zealand Insurance Company, of Auckland, New Zealand, subject to approval by C. H. Colby, manager, against fire and lightning on property to the amount of $500, all for the term of one year, and one note payable on the 1st of August, 1893, and on the —— day of ——, 189—, respectively; also $15 in cash—all to be returned if policy is not issued.

Dated June 22, 1893.

(Signed)     "J. A. HAYS,
                     "Agent."

"If policy is not received within thirty days from the date of this receipt, report that fact to C. H. Colby, Manager, Masonic Temple, Denver, Colorado."

No policy was ever issued by the company. On the twenty-eighth day of August, 1893, plaintiff sent telegram to C. H. Colby, manager, as aforesaid, advising him of the destruction of the property by fire, to which telegram plaintiff testifies he received the following reply:

"Mr. R. A. Easley, Glenn's Ferry, Idaho.

"Dear Sir: Replying to your telegram of this date, will say that we have no record of any policy issued to you. We have written Mr. Hays, of Boise City, to get information in regard to the matter. If he took your application of insurance, we never received it, and we have no such name on our books.

"Very truly yours,

"C. H. COLBY,
"Manager."

Proof of loss was made, and payment refused, whereupon this action was brought to recover the sum for which insurance was applied for.

Upon the trial the plaintiff testified as follows: "Mr. Hays came to my place of business, and wanted to take an application for insurance on my place against fire and lightning. Said he would insure me for $500 per year for twenty-nine dollars and fifty cents in the New Zealand Fire Insurance Company, of Auckland, New Zealand. I told him he could write the application. He did so, and I paid his fifteen dollars cash, and gave him my note for fourteen dollars and fifty cents, due the 1st of August. He gave me a receipt." (See *supra*.) Plaintiff testified further: "I never received a letter from C. H. Colby, Denver, Colorado, bearing date July 20, 1893, wherein he declined to write my policy. I never got a letter from Bliss, of Boise City, returning the application and note." On the part of the defendant, C. H. Colby, manager of the defendant company for Colorado, Utah, and Idaho, testified: That he received the application for insurance of plaintiff through William M. Bliss, the representative of the company at Boise City. That on the twentieth day of July, 1893, he sent the following letter to the plaintiff at Boise City, Idaho:

"July 20th, 1893.

"R. A. Easley, Glenn's Ferry, Idaho.

"Dear Sir: We are in receipt of your application for insurance through Agent Bliss of Boise City, which we decline to write, and this day return the note and application to you. We do not take notes on premiums on mercantile risks. Besides, the hazard is too great. We prefer not to write it.

"Truly yours,

"C. H. COLBY."

The said witness further testified, in answer to the question by the counsel of plaintiff, "What did you do with the letter?" "Put it into the mail box—United States mail box. I sent it in a return envelope like this: 'In ten days return to Charles H. Colby, Manager Denver Branch, New Zealand Insurance Company, Room 35, Masonic Temple, Denver, Col.' I never received it back. It was copied in that letter-book at page 342. Q. Did you mail this yourself? A. I can't swear that I did. I paid the postage. In the course of business in my office I employ several clerks. I cannot do it all myself, but I dictate my letters to a stenographer. She writes them out, brings them to me to sign, then they are copied. Individually I could not swear that I mailed that particular letter. I sign the letters and put them in the envelopes, and seal them up, and it is my usual custom the last thing to deposit those letters in the mail box—in the United States mail box in the Masonic Temple. I know my mail went into the postoffice that night, for I received replies from other letters. I know the letter was written that day. It was not around the office afterward. . . . . I returned the application and premium to Bliss."

The court instructed the jury, *inter alia,* as follows: "You are instructed in this case that, before you can find a verdict for the plaintiff, you must find that the application in question was approved by C. H. Colby, manager. If you find that C. H. Colby, manager, declined the application, then you must find for defendant. You are instructed that the approval of the application for insurance herein must have been by the act of C. H. Colby, manager, and no other person." No exception is taken to this instruction, nor should there have been, for it

states the law of the case, and all of the law applicable thereto, as made by the record. But the district judge also gave the following instructions: "The jury are instructed that, if you find for the plaintiff in this action, you will assess his damage at the sum of $500 and interest thereon at the rate of ten per cent per annum from August 28, 1893. The jury are instructed, if you find from the evidence that J. A. Hays made a contract with the plaintiff on June 22, 1893, whereby he insured the property described in plaintiff's complaint against loss or damage by fire for the term of one year from said date in defendant company, and that he received at that time from the plaintiff, as premium on said insurance, the sum of fifteen dollars, and plaintiff's note for fourteen dollars and fifty cents; and he turned over to said company the premium so collected by him; and you further find that said company, after knowledge of the acts of said J. A. Hays in regard to this contract of insurance, accepted, kept, and retained the premium aforesaid, and still keeps and retains the same—then, in that case, I instruct you that the defendant thereby ratified the contract made by said Hays, and they are bound thereby." Under these instructions the jury found: "Special Verdict: Q. Was the application for insurance in question in this case approved by C. H. Colby, manager of defendant? A. Yes. [Signed] Jos. Spiegel, Foreman." "Verdict: We, the jury, find for the plaintiff, and assess his damage at five hundred dollars, with interest at the rate of ten per cent per annum; amounting to $201.68. Jos. Spiegel, Foreman." Colby, the manager of defendant, testifies that he mailed to the agent of the company at Boise City, on July 20, 1893, a letter declining on the part of the company to accept the risk, and the agent at Boise (Bliss) testifies that he forwarded the same, with the application and premium, to J. A. Hays, the person who solicited and received the application for insurance from the plaintiff. There was no evidence whatever of the acceptance or approval of the application by Colby, the manager, upon whose approval alone the contract of insurance could be predicated. But instructions 3 and 4 of the court gave to the jury a rule of decision which we do not find warranted by principle or authority. Plaintiff, in support of his contention that, notwithstanding the application

of plaintiff was rejected by Colby, the manager of the defendant, and no contract of insurance was ever made, still from the fact that the agent of the company received the application, and at the same time the premium, and at the time of the destruction of the property the premium had not been returned to plaintiff, the jury could, from such facts, infer a contract, cites *Gray v. Association* 111 Ind. 531, 11 N. E. 477, in which case the party insured made application to a regular agent of the association. The rules and by-laws of the company, which were known to applicant, forbade the issuance of a certificate to one under eighteen years old; but the agent of the company, on being informed by the application of his true age—seventeen years and ten months—before the application was made, informed him that two months, being so short a time, would make no difference, and thereupon the certificate of insurance was issued to him, for which he paid the admission fee and two advance assessments. In this case the contract was made. The company sought to avoid it thereafter on the ground of fraud. The court in that case says (we cite from the syllabus) ; "Although an applicant for a benefit certificate may have misrepresented his true age, which was unknown to the association, yet when eighteen months are allowed to elapse between the proof of death showing the true age and the determination of a suit thereon by the beneficiary, without an offer on the part of the association to rescind the contract, or to refund the money received thereon, it will be estopped from setting up such defense." We fail to see the application of this decision to the facts in the case at bar. In this case, not only had no contract been entered into, but the manager of the defendant, upon whose approval the completion of the contract was, by the terms of the receipt given by the agent, to depend, had positively declined to accept the risk or write a policy thereon.

Respondent also cites *German Fire Ins. Co. v. Columbia Encaustic Tile Co.*, 15 Ind. App. 623, 43 N. E. 41. In this case the clerk of a regularly authorized agent of the company, following the regular custom of his office, had accepted a risk, and written a policy thereon. The company sought to avoid the policy by showing a want of authority in the clerk to issue the

same. .The policy had been issued, the contract made, in accordance with a theretofore recognized custom. How can this decision be said to support the contention of respondent? In the case at bar the court is called upon, not to enforce a contract already made, and acquiesced in by the defendant, and which the defendant is seeking to avoid by reason of some alleged fraud or misrepresentation on the part of the plaintiff or its agents, but to infer a contract—make a contract for the defendant—and enforce it, which defendant had positively refused to make. Respondent cites and quotes at some length from the decision of the supreme court of the United States in the case of *Insurance Co. v. McCain,* 96 U. S. 84. In that case the company had issued a policy upon the life of the decedent, had received its first annual premium thereon, and, when the second annual premium fell due, the assured paid it to the same agent, who reported it to the company, who received it without objection, and afterward, when suit was brought upon the policy, raised the objection that the agent was not authorized to receive the second premium. We have not found in any of the cases cited by respondent in this brief, nor have we been able to find by diligent search, a single authority supporting the contention of respondent that, in the face of a positive refusal by the defendant to enter into a contract proposed, the court will infer a contract, and decree its enforcement. In *Insurance Co. v. Mayes,* 61 Ala. 163, the agent of the company received the application of one B. for life insurance, the applicant paying at the time a percentage of the premium, the fees for the policy, and note for the remainder of the premium, and forwarded the same for the rejection or acceptance of the insurance company, giving a receipt to B., in which it was stated that "B. was to be considered insured from the date of the receipt of said application shall be approved and accepted by said company, in which case a policy shall be issued to him, and this receipt surrendered; but, if said application shall be rejected, then the amount named and the note given shall be returned to B., and this receipt shall become null and void." The application was duly forwarded to the insurance company, which, after delay of several weeks, rejected the application, but did not give up the cash payment or note, no demand having been made for their return. B. died a few

weeks afterward, without being informed of the rejection of his application, and his administrator brought suit to recover upon the receipt as on a contract of insurance. The court held (we cite from the syllabus): "1. The transaction constituted merely a proposal from B. to the agent for a contract, the unqualified right of acceptance or rejection being reserved to the principal; and the proposal could not ripen into a contract until accepted by the principal. 2. Mere delay of the insurance company in accepting the offer or proposal and in returning the cash premium, for which demand was not made, did not amount to an acceptance of the proposal, and convert it into a contract. 3. The insurance company had the right to decline acceptance of the proposal without assigning any cause, no contract being made by the agent, who claimed no power to make any contract." The receipt given by the agent in the case at bar requested the applicant, in case he did not receive a policy within thirty days from the date of the receipt, to report that fact to C. H. Colby, manager, Masonic Temple, Denver Colorado. It is not claimed or pretended that plaintiff ever gave or attempted to give such notice. Further, it does not conclusively appear that the premium and note were not returned to the plaintiff. Plaintiff does testify in rebuttal: "I never received from Mr. Bliss or from Mr. Hays any return of the premium paid, or the note, or any notice that it would be returned." This can hardly be claimed to be a denial that he ever received either the premium paid or the note. But it matters not whether he did or not receive either or both, for such nonreceipt could not be construed into an acceptance of his proposal for insurance by the defendant.

This view of the law seems to be quite uniformly recognized. (See *Insurance Co. v. Johnson*, 23 Pa. St. 72; *Haden v. Association*, 80 Va. 683; *Pickett v. Insurance Co.*, 39 Kan. 697, 18 Pac. 903; *O'Brien v. Insurance Co.*, 108 Cal. 227, 41 Pac. 298; *More v. New York Bowery etc. Ins.*, 130 N. Y. 537, 29 N. E. 757; *Winchell v. Insurance Co.*, 103 Iowa, 180, 72 N. W. 503, and cases there cited.) The agent, Hays, whatever other authority he may have had, had no warrant or authority to make a contract of insurance for or on behalf of defendant, nor did he attempt to do so. He accepted from plaintiff a proposal for in-

surance, which was understood both by the agent and by plaintiff, and unequivocally set forth in the receipt given by the agent and accepted by the plaintiff. Such application was rejected by the defendant, of which action the manager of defendant notified plaintiff by mail. The jury found specially that C. H. Colby, the manager of the defendant, approved the proposal of plaintiff. The only evidence upon the subject of the approval of the proposal of plaintiff which appears in the record is the testimony of said C. H. Colby, who states that he declined to approve said risk on the 20th of July, 1893. Without a particle of evidence to support such finding the jury found he did approve it. Doubtless the action of the jury was influenced by the fourth instruction given them by the district court. We have not been able to find a single authority sustaining that instruction; on the contrary, every one of the cases cited *supra* negative the proposition contained in said instruction. The judgment of the district court is reversed, and the cause remanded for further proceedings consistent with this opinion.

Sullivan, C. J., and Quarles, J., concur.