**UNITED BONDING INSURANCE COMPANY, Plaintiff-Appellant,**

v.

**BANCO SUIZO–PANAMENO, S. A., Defendant-Appellee.**

No. 27546.

United States Court of Appeals, Fifth Circuit.

Feb. 16, 1970.

William T. Moore, Miami, Fla., for plaintiff-appellant, Moore, Welbaum, Zook & Jones, Miami, Fla., of counsel.

Robert L. Parks, Karl J. Leib, Jr., William R. Dawes, Lynn F. Lummus, Miami, Fla., for defendant-appellee, Dawes & Lummus, and Quinton, Leib, Parks & Aurell, Miami, Fla., of counsel.

Before JOHN R. BROWN, Chief Judge, TUTTLE and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

This is a suit on four financial guarantee bonds. United Bonding Insurance Company (hereafter United Bonding) brought an action for a declaratory judgment that the signatures of its licensed agent, Virgil P. Lynch, on the four bonds, each in the amount of $25,000.00 and guaranteeing payment by Sari C., Inc., a Florida corporation, to Banco Suizo-Panameno, S. A. (hereafter Banco), a Panamanian corporation, of two promissory notes dated July 1, 1965, and two promissory notes dated July 8, 1965, are forgeries and not signed with the knowledge and consent of Lynch, and thus null and void, and that Banco deliver up the original bonds and attached powers of attorney for cancellation and destruction. Banco counterclaimed, asserting that the bonds are valid and binding obligations against United Bonding; that none of the notes have been paid; and demanding judgment for the sum of $100,000.00, plus interest, costs and attorneys' fees. Banco further alleged that there was apparent authority in United Bonding's agents to execute the bonds; United Bonding responded by alleging that Banco was negligent in accepting the bonds. The District Court, sitting without a jury, entered a judgment after a trial in favor of Banco on its counterclaim in the total amount of $140,910.48. It is from this judgment that United Bonding appeals. We affirm.

On June 1, 1965, United Bonding entered into an agency agreement with Allied Underwriters, Inc., a Florida corporation formed by Lynch and Michael Denton, an officer of Sari C., Inc., as a corporate vehicle to engage in the surety business and to enable Lynch to write bonds in behalf of Sari C., Inc.[1] Lynch signed the agreement in behalf of Allied Underwriters, Inc. Contemporaneously with the execution of this agency agreement, United Bonding filed in the official records of the Circuit Court of the Eleventh Judicial Circuit of Florida, in and for Dade County, a general power of attorney appointing Virgil P. Lynch as its attorney in fact with the power to execute, seal, and acknowledge, and deliver on its behalf as surety bonds, undertakings and contracts of suretyship not to exceed $50,000.00, and further providing that the execution and acknowledgment of any such bonds by Lynch in pursuance of such appointment would be binding upon United Bonding as if the bond had been executed and acknowledged by a duly authorized officer of United Bonding. Subsequently, United Bonding provided Allied with prepared powers of attorney, bond applications, reports, a corporate seal of United Bonding, stationery and other supplies

---

1. The agency agreement between United Bonding and Allied provides in relevant parts:

 * * * the Company hereby grants authority to Agent to receive and accept proposals for such contracts as the Company has authority lawfully to make, subject, however, to restrictions placed upon such Agent by the laws of the state or states in which such Agent is authorized to write bonds and to the terms and conditions hereinafter set out.

 * * * * *

 (2) Agent has full power and authority to receive and accept proposals for bonds covering such classes of risk as the Company may, from time to time, authorize to be insured, to collect, receive and receipt for premiums on bonds tendered by the Agent to and accepted by the Company and to retain out of premiums so collected, as full compensation on business so placed with the Company, commissions as may be from time to time mutually agreed upon.

incidental to the performance by Allied of its agency duties for United Bonding.

On July 1, 1965, Sari C., Inc., entered into a loan transaction whereby it borrowed $50,000.00 less discount from Banco and executed two promissory notes for $25,000.00 each. An identical transaction, again involving two promissory notes for $25,000.00 each, took place on July 8, 1965. Each of the promissory notes was secured by a financial guarantee bond of $25,000.00 written on United Bonding. Each bond, entitled on its face "indemnification agreement", bore the purported signature of Lynch as agent for United Bonding and the corporate seal of United Bonding. The bonds were written on stationery supplied by United Bonding and prominent at the top of each were the words: "United Bonding Insurance Company" and below this "Allied Underwriters Inc., General Agent". Attached to each promissory note was a bond and a certified copy of a power of attorney stating that Virgil P. Lynch was the true and lawful attorney in fact of United Bonding. These certified copies were supplied to Allied by United Bonding and sealed with the corporate seal United Bonding entrusted to Allied. At the time of these transactions, the attorneys for Banco received certificates from the Clerk of the Florida Circuit Court based on the power of attorney there on file and evidencing the authority of Lynch as United Bonding's attorney in fact.

It is uncontroverted that Charles Goswick, who was employed by Allied as its bond underwriter, actually signed Lynch's name to each of the $25,000.00 bonds involved here. Although the evidence on this point is conflicting, there is testimony in the record that the customary practice in the office of Allied Underwriters was for Goswick to sign Lynch's name to bonds; that Lynch had authorized Goswick to do so and was aware of the practice; that Goswick signed Lynch's name to bonds even while in the presence of Lynch; and that Lynch was present when the four bonds in question were signed by Goswick at Allied's office. Lynch himself testified that it was his custom at Allied to allow his secretary to sign his name to insurance undertakings and that such practice was customary in the insurance industry, although he strongly denied ever having authorized Goswick to sign his name.

In its Findings of Fact and Conclusions of Law, the District Court concluded that while financial guarantee bonds are unusual in the industry and Lynch had no actual authority from United Bonding to write such bonds, Allied was United Bonding's agent, and that the acts of Allied's agents, including Goswick, were the acts of Allied; that at all times material to the action both Lynch and Goswick had implied or apparent authority to act on behalf of United Bonding and Banco relied thereon to its detriment; and that, as a result, United Bonding is estopped to deny its liability for the acts of Lynch and Goswick. The District Court further found that "[d]uring the times material to this cause of action, it was customary in the offices of Allied for Goswick to sign Lynch's name to bond undertakings, and such bonds were received and accepted by [United Bonding]". Finally, the District Court found that at no time did the officers, agents or employees of Banco have knowledge or reason to know that Lynch or Goswick lacked authority to execute the bonds in question or were they presented or confronted with circumstances such as to reasonably put them on inquiry as to the authority of Lynch or Goswick.

There are three issues presented by this appeal: *first,* whether the District Court erred in holding United Bonding liable on the basis of implied or apparent authority vested in Lynch and Goswick by reason of United Bonding's representations or conduct toward Banco and Banco's reliance thereon; *second,* whether Banco was negligent in accepting the four bonds; and *third,* whether the District Court erred in awarding attorney's fees over and above damages

which themselves exhausted the penalty amount of each bond.

■ Under Florida law, agency by estoppel, i.e. apparent authority, embraces the primary elements of a representation by the principal, reliance on the representation by the claimant, and a change of position by the claimant in reliance on the representation. Doric Company v. Leo Jay Rosen Associates, Inc., 5 Cir. 1962, 303 F.2d 817, 819. See Thomkin Corp. v. Miller, 156 Fla. 388, 24 So.2d 48 (1945); Parsley Brothers Construction Co. v. Humphrey, Fla.App. 1962, 136 So.2d 257; Hughes v. Pierce, Fla.App.1961, 141 So.2d 280; Tampa Sand & Material Company v. Davis, Fla.App.1960, 125 So.2d 126. The existence of apparent authority is a question of fact. Hughes v. Pierce, supra. A review of the evidence reveals ample support for the conclusion that both Lynch and Allied Underwriters had been clothed with apparent authority by United Bonding in their dealings with Banco. United Bonding filed with a Florida Circuit Court a general power of attorney evidencing Lynch's appointment as its true and lawful attorney in fact and supplied to Allied a quantity of certified copies of a power of attorney appointing Lynch as its agent, which were to be attached to bond undertakings written by Allied in behalf of United Bonding. Along with these powers of attorney, United Bonding supplied Allied with its corporate seal, stationery and other supplies incidental to Allied's performance of its agency duties. It is well established in Florida that evidence that an insurance company supplied such items to its agent is sufficient to support a finding that the agent was clothed with apparent authority. Fidelity and Casualty Co. of New York v. D. N. Morrison Const. Co., 116 Fla. 66, 156 So. 385 (1934); Russell v. Eckert, Fla.App.1967, 195 So.2d 617; Hughes v. Pierce, supra.

■ Nor is there any doubt that Banco relied on these representations to its detriment. Each of the financial guarantee bonds presented to Banco were written on United Bonding station-

ery which named Allied Underwriters as its general agent, bore the purported signature of Virgil P. Lynch and the corporate seal of United Bonding. Attached to each of these bonds was a certified copy of a power of attorney supplied to Allied by United Bonding and stating that Lynch was its attorney in fact, and each of these copies was, in turn, sealed with the United Bonding corporate seal supplied Allied. Furthermore, Banco received a certified copy of the power of attorney United Bonding had filed with the Florida Court. Certainly, these indicia of authority in both Lynch and Allied could lead to a detrimental reliance by Banco, as the District Court so found.

■ The District Court correctly held as a matter of law that a corporation may serve as an agent for another corporation and that, because a corporation can only act through its agents, the acts of Allied's agents, including Goswick, were the acts of Allied, which, in turn, was the agent of United Bonding. English and American Ins. Co. v. Swain Groves, Inc., Fla.App.1969, 218 So.2d 453, 456. Thus, there is no error in the District Court's finding that "[a]t all times material to the action both Lynch and Goswick had implied or apparent authority to act on behalf of [United Bonding] and [Banco] relied thereon to its detriment".

The difficulty in this case arises from the fact that Goswick signed Lynch's name to each indemnification agreement and the resulting need to determine the legal significance of this fact.

■ The District Court found that "[d]uring the times material to this cause of action it was customary in the offices of Allied for Goswick to sign Lynch's name to bond undertakings, and such bonds were received and accepted by [United Bonding]". Although the evidence is conflicting, there is testimony that such a custom existed and that the four bonds here in question were signed by Goswick with the authorization of Lynch and in his presence at Al-

lied's office. Thus, it cannot be said that the finding of the District Court on this point is clearly erroneous.

■ There is authority for the proposition that a custom may be shown of a clerk in signing the insurance agent's name which may bind the agent and the insurance company he represents. German Fire Ins. Co. v. Columbia Encaustic Tile Co., 15 Ind.App. 623, 43 N.E. 41 (1896). See 16 Appleman Insurance Law and Practice, § 8702 (Rev.1968). The Court in *German Fire* said:

> Nor can we say that the policy was invalid because Coe's name was signed by Seyfried, the chief clerk of his office. The jury was not without evidence from which it has the right to conclude that Seyfried was authorized to sign Coe's name to policies. There was also evidence from which the jury could determine that the company knew, or should have known, that Seyfried was employed by Coe, and passed upon applications, and signed his name, and was in the habit of acting for him, in such matters. The company was therefore responsible, not only for the acts of its commissioned agent, within the scope of the authority expressly conferred by the commission, but also for the acts of Seyfried in connection with the business of insurance in which he was engaged. (citing [Indiana] Insurance Co. v. Hartwell, 123 Ind. 177, 24 N.E. 100.) 43 N.E. at 45.

Here, not only is there evidence that Goswick was authorized to sign Lynch's name to bond undertakings, there is evidence that United Bonding could have known that Goswick was employed by Allied, passed upon applications, signed Lynch's name and was in the habit of acting for him in such matters, but, as the District Court found, at no time inquired as to the employees of Allied, nor did their bond manager for the State of Florida or from the home office ever visit Allied's office. An insurance company should not be allowed to clothe an agent with the indicia of almost unlimited authority and then hide its head in the sand, disregard the office practices instituted by its agent, and wait until a substantial loss results, only to repudiate the agent's undertaking on the basis of practices it could have ascertained and controlled with the slightest exercise of diligence.

■ .Furthermore, it is well established in Florida that an act done by a person in the presence of another and by the other's direction or with his consent, even the signing or execution of a sealed or written instrument, is not deemed the act of an agent, but is the direct act of a person by whose direction it is done. Pierce v. Dekle, 61 Fla. 390, 54 So. 389 (1911); Smith v. Dowling, 81 Fla. 867, 89 So. 315 (1921). In a recent Florida criminal case, State v. Hickman, Fla. App.1966, 189 So.2d 254, cert. den. without opinion, 194 So.2d 618, in which an arrest warrant was challenged because it was not signed by the Justice of the Peace, but stamped with a rubber facsimile of his signature by his secretary, it was held that a signature may be legally made not only by the signer himself, but by and through someone duly authorized by him if done in his presence. The Court went on to say that the meaning of "presence" is indefinite and that a facsimile signature was placed on a document in the presence of the Justice of the Peace if it was his judgment that was involved and exercised and the rubber stamp constituted an attestation that it was his act, thus enlarging the adoption doctrine in Florida.

The District Court was therefore warranted to conclude from the record in this case that either a custom existed in the office of Allied Underwriters that Goswick signed Lynch's name to all bond undertakings and that United Bonding should have known this, so that both Lynch and United Bonding were bound by Goswick's signing Lynch's name, or that Lynch authorized and directed Goswick to sign his name to the bonds here in question and that Goswick did so in Lynch's presence, either actual or constructive, so that the signing constituted a direct act of Lynch. This being the

case, it makes no difference whether Banco relied on Lynch's apparent authority to execute the bonds or the apparent authority lodged in Allied; Goswick's signing of Lynch's name was the same as Lynch signing the bonds himself.

United Bonding makes a great deal over the testimony of Bradford S. Magill, the New York attorney who represented Banco in the loan transactions with Sari C., made at a companion case, Maryland National Insurance Company v. Sari-C., Inc., S.D. Fla., No. 65–584–Civ–JE, which is still pending before the District Court, to the effect that Goswick was introduced and represented himself as Lynch at the loan closings in Magill's office on July 1st and 8th, 1965. The District Court refused to admit the transcript of this testimony into evidence in the present case on the basis of his construction of an agreement between counsel concerning the admission of evidence in the companion case, which was tried first.

■ United Bonding contends that the agreement was that evidence introduced in the Maryland National case would automatically become evidence in the present case, but that evidence introduced in the present case would not become part of the record in the Maryland National case. Banco takes the position that there were two separate lawsuits with two separate records and that the agreement was to allow counsel in the present case to introduce testimony from the Maryland National record in order to avoid duplication and delay. The District Court found that Banco's version of the agreement was correct. It cannot be said that this finding was clearly erroneous; the colloquy between counsel and the trial judge concerning the agreement is ambiguous and the trial judge was in a much better position to determine the true understanding of the parties than is this Court. Furthermore, the trial was conducted according to Banco's version of the agreement, and, recognizing this, counsel for United Bonding should have introduced into evidence the testimony from the Maryland National case they wished to have considered.

■ Even if this evidence were in the record, however, it would not change the outcome of this case. United Bonding contends that even if Lynch authorized Goswick to sign his name and perform the duties of an agent, such authorization could not bind United Bonding when no one from Banco met or dealt with Lynch, even though they believed they did so. This does not follow. The principals to the two loan closings in New York were Banco and Sari C., and the involvement of any other party was merely incidental to the main transaction. It is apparent that the financial guarantee bonds with which Sari C.'s promissory notes were to be secured were fully executed in Florida and could have been attached to the notes in New York by Sari C.'s representatve without any representative from United Bonding being present. Furthermore, Banco was not relying on the presence of a representative from United Bonding at the closing to insure the adequacy of the bonds, but rather on the signature, seal, powers of attorney and other indicia of authority intrusted to Lynch and Allied by United Bonding.

■ The District Court refused to find Banco negligent in accepting the four bonds totalling $100,000.00 when the powers of attorney attached to the bonds and the certificate of the Florida court evidencing Lynch's authority stated that his authority was limited to bonds not exceeding $50,000.00 or further that Banco was negligent in failing to check the credit of Sari C., Inc., and in failing to determine what Sari C. was doing with the money it was borrowing. It is well settled that members of the public may, in good faith, rely on an agent's apparent authority unless the circumstances are such as to put a reasonable person on inquiry. Stiles v. Gordon Land Co., Fla.1950, 44 So.2d 417, 421. It would seem that Banco met the minimum requirements of reasonable care in relying on the various powers of

attorney and other indicia of authority, and, since the loan transactions with Sari C. were divided in time and four separate notes were executed, it could reasonably conclude that the four bonds were within the authority granted by the powers of attorney and did not constitute a single bond undertaking. Moreover, Banco's failure to check the credit of Sari C. or to inquire into the use Sari C. proposed for the loan proceeds is irrelevant to whether Banco's reliance on Lynch's or Allied's apparent authority was reasonable. Therefore, it cannot be said that the District Court was clearly erroneous in failing to find that the circumstances confronting Banco were such as to put a reasonable person on inquiry.

Each of the bonds provide that: "THE PRINCIPAL AND SURETY *further agree* jointly and severally to pay all costs of collection, including a reasonable attorney's fee, in case the principal thereon is not paid at the respective maturity thereof * * *" (Emphasis added.) On this basis the District Court awarded Banco reasonable attorney's fees in addition to its recovery on the bonds, so that the total judgment, less interest, exceeded the total penalty amount of the bonds. United Bonding complains that this was error. Taking the plain meaning of the words "further agree", the construction placed on the attorney's fee provision of the bonds by the District Court was correct since the words "further agree" indicate that attorney's fees are payable over and above the penalty amount of the bonds and that the recovery under the bonds is not specifically limited to the penalty amount. See Truax v. Capitol Life Ins. Co., 1933, 166 Okl. 153, 26 P.2d 755.

We therefore hold that the District Court was not clearly erroneous in finding that Banco reasonably relied to its detriment on the apparent authority that United Bonding vested in Lynch and Allied, and was correct in holding that United Bonding was thereby liable on the four financial guarantee bonds and that Banco was entitled to attorney's fees over and above the penalty amounts of the bonds. The judgment of the District Court is

Affirmed.