| | |
|---|---|
| 73 | 277 |
| 28a | 202 |
| 73 | 277 |
| 79 | 609 |
| 73 | 277 |
| 80 | 539 |
| 73 | 277 |
| 85 | 572 |
| 73 | 277 |
| 86 | 207 |
| 73 | 277 |
| 89 | 680 |

---

## San Antonio & Aransas Pass Ry. Co. v. W. R. Robinson.

### No. 2690.

1.  **Continuance.**—An application for continuance on account of the absence of witnesses to disprove certain allegations in the pleadings of the plaintiff is properly overruled when the plaintiff withdraws and abandons the allegations sought to be disproved by the absent witnesses.

2.  **Practice—Contradictory Instructions.**—Where contradictory charges are given which may be material, it seems a reversal should follow on appeal.  The proper way to correct an erroneous charge is to withdraw it from the jury.

3.  **Same.**—See charges given under pleadings and evidence where it is probable that a correct charge did not eliminate the effect of an incorrect charge already given.

4.  **Pleading—Damages.**—Where an allegation of loss from inability to pursue a lucrative profession was withdrawn, it was error that a charge may have allowed such loss to be computed in the finding of amount of damages.

5.  **Charge—Negligence.**—The court below charged the jury: "Where a railroad ·car containing passengers is thrown from the track and a passenger who has paid for his fare is thereby injured, the presumption is that the accident resulted either from the fact that the track was out of order, or that the train was badly managed, or both combined, and the burden is on the defendant company to show by preponderance of ·evidence that it was not negligent in any of these respects."  *Held*, error in that it invades the province of the jury in finding negligence as a fact from the testimony to the circumstances.  The charge also is upon the weight of evidence.

6.  **Wife and Children.**—In a suit against a railway company for personal damages suffered by plaintiff when a passenger it was not error to allow proof that plaintiff had a wife and four children, nor that his counsel alluded to his family relations in argument.  See statement of case.

7.  **Res Gestæ.**—A statement by a railway conductor made after a wreck of the train under his control with regard to the cause of the wreck, is not competent; it is not *res gestæ.*

8.  **Declarations of Employes.**—Declarations of railway employes are not admis-

sible against the railway unless made concerning the cause of the wreck and at the time and place of its occurrence, under circumstances making them part of the *res gestæ*.

APPEAL from Colorado. Tried below before Hon. Geo. McCormick.

August 17, 1887, Robinson filed his original petition against appellant, and on July 4, 1888, he filed his "first amended original petition," alleging that on July 4, 1887, he boarded the regular passenger train of appellant's company at a station on its line of road in Colorado County, Texas, bound for the town of Cuero on the line of said road; that he paid his fare in cash to the conductor in charge of the said train, and was duly received as a passenger by said company; that the said train was composed of two passenger coaches and fourteen cars loaded with cross ties; that there were no brakes on the cars except on the three first cars loaded with ties just behind the engine and the two passenger coaches, thus leaving eleven cars loaded with ties in the middle of the train without the necessary means of control; that the road was newly constructed and certain portions thereof in bad condition, and the appellant should have run its cars with great care, prudence, and caution, but instead thereof run its train at an unusual, high, and dangerous rate of speed, so much so that when the station of Sublime was reached on said road and the train halted the engineer of the train was cautioned not to again run at such speed, as the lives of the passenger were thereby endangered; that after leaving said station of Sublime and while passing through Lavaca County, near the town of Hallettsville, the next station to Sublime, the employes of defendant operating said train by gross negligence, carelessness, and wanton recklessness ran said train at the rate of fifty miles an hour down a heavy grade and approaching a bridge on defendant's track; that when said bridge was reached the track gave way—said track and bridge being in bad condition—the entire train went to pieces, wrecking both passenger coaches and the other cars—said wreck being on account of appellant's gross negligence and carelessness in permitting its track to be in said condition and the high and dangerous rate of speed at which said train was run by appellant's employes.

That in said wreck he received the following injuries, many of which he believes to be of a permanent character: "Severe cut in the left side of the head in the temporal region, laying the skull bare; that in falling from the wreck he fell on his head, receiving a severe shock and sprain in the neck, from which he has suffered from that day until now, and at the present time he is unable to move his head forward or to the right without great pain. He also received severe contusions of the spine in the lumbar regions, the right hip and groin, bursting the ligaments and muscles from their attachments; also severe contusions, involving the genital organs, and the right thigh from the hip to the knee; that the injury to the spine is permanent, and he is never free from pain and can

not stand without support.   The shock to his nervous system is exceedingly great and is permanent; his right leg is paralyzed, having almost lost the power of co-ordination in that member, and is compelled to use crutches; that the worst of all injuries which occurred to him from the wreck of the train aforesaid is the additional one, the complete paralysis of the sexual organs of generation, which this plaintiff says is permanent and which he is informed will extend throughout his life.

"That from the day he received the injuries he has suffered physical and mental pains; he is gradually growing weaker, his injuries are permanent, and he is a physical wreck.   Besides from injuries to the fifth nerve there is a gradual failure of his visual organs—claiming special damaged by reason of being deprived of the practice of his profession, being a skilled physician and surgeon."   Said petition concluding with a prayer for $50,000 damages.

On September 9, 1887, appellant filed general demurrer, and on February 14, 1888, filed first amended original answer, consisting of general demurrer and general denial, and specially pleading that appellant was operating its road, which was new and incomplete, for purposes of construction, knowledge in appellee of the increased risk incident to such traveling, and contributory negligence in appellee in jumping from appellant's car, and in subsequently aggravating his injuries.

On March, 5 1888, appellee filed his first supplemental petition, denying all the allegations in appellant's first amended original answer.   On March 27, 1888, the cause was first called for trial in the afternoon.   Appellee announced "ready," and appellant announced "not ready," and asked leave of the court to prepare an application for continuance, which leave was granted, and on the following morning, to-wit, March 28, appellant presented its motion for continuance, whereupon appellee by leave of the court filed a written plea eliminating and abandoning that portion of his first amended original petition claiming special damage on account of loss of his practice as a physician and surgeon, and the court thereupon overruled defendant's application for continuance based upon want of testimony upon that point.  Appellant then objected that the case was called out of its regular order on the docket, and that another case was in advance of it, when appellant was notified by attorneys on either side of said other case that it was postponed by arrgement, and the court notified thereof by the call of this case, which objection was overruled, and a trial thereof resulted in a judgment for appellee for $10,000.   The defendant appealed.   This statement is from the brief of appellee.

*S. C. Patton,* for appellant. — 1. A first application need not state facts expected to be proved by absent witnesses (Rev. Stats., art. 2277), and a first application setting up absent witnesses whose testimony is

material and surprise on account of new issues made in pleadings just filed would not be presumed to state facts expected to be proved by absent witnesses unless such were clearly the purport of the same.

2. The court erred in permitting witness R. H. Kingsbury to testify that "I spoke to the conductor and brakeman about the fast running before the wreck, and at Sublime, where we had breakfast, one of the trainmen—I think Pruitt, the conductor—warned the engineer not to continue running so fast, remarking that the road was unsafe, and when we reached Sublime, where we had breakfast, at which time I heard a train man (I think the conductor) warn the engineer about his reckless running over an unsafe, unsurfaced, and hastily constructed road," over objections of defendant for the reason that the same was hearsay evidence.

3. Special damages must be pleaded in order to authorize evidence of or judgment for same, and the charge of the court must be addressed to the issues made in the pleadings and not misleading. 2 Sedg. on Dam., 7 ed., pp. 609, 610; Railroad Co. v. Shirley, 45 Texas, 357; Mayo v. Savoni, 1 Ct. App. C. C., art. 216.

4. The court erred in permitting the plaintiff when testifying in his own behalf to testify over the objection of defendant that he had a wife and four children, also in permitting plaintiff's counsel, Wells Thompson, Esq., while making the closing address to the jury, to say "he (meaning plaintiff) would be derelict in his duty to himself if he did not make the railway company (meaning defendant) pay himself and his family," also, "well, he (meaning plaintiff) has got a family and they will get the benefit of it," and thereby inducing the jury trying the case to believe that the wife and children of plaintiff were entitled to compensation for damages in this case. T. & P. Ry. Co. v. Pollard, 2 W. & W. Ct. App. C. C., art. 481; Mims v. Mitchell, 1 Texas, 446; Paul v. Percy, 7 Texas, 345; Rivers v. Foote, 11 Texas, 662; Ortiz v. De Benavides, 61 Texas, 63.

5. The court erred in charging the jury "that where a railroad car containing passengers is thrown from the track and a passenger who has paid his fare is thereby injured, the presumption is that the accident resulted either from the fact that the track was out of order, or that the train was badly managed, or both combined, and the burden is on the defendant company to show by a preponderance of evidence that it was not negligent in any of these respects," and thereby charging upon the weight of the evidence and misleading the jury.

6. The charge of the court must be applicable to the issues made in the pleading and the evidence in the case, and should not be misleading and contradictory. Loving v. Dixon, 56 Texas, 75; Mitchell v. Zimmermann, 4 Texas, 25; Norvell v. Oury, 13 Texas, 31; Love v. Wyatt, 19 Texas, 312; Dodd v. Arnold, 28 Texas, 27; H. & T. C. Ry. Co. v. Rider, 62 Texas, 267.

*Foard, Thompson & Townsend, John M. Green,* and *Oscar D. Kirk-land,* for appellee.— 1.   When defendant files an application for continuance to disprove certain allegations in plaintiff's petition, and those allegations are withdrawn and abandoned by plaintiff, such evidence becomes immaterial and want of such will not support an application for continuance.

An application for continuance, though it be the first, to secure evidence as to new issues raised by an amended petition, and not raised in the original, will after said issues are abandoned be of no moment, and will not show diligence as to matters stated in the original petition, especially where the original petition had been on file many months previous to the amended petition, as in this case, and no effort made to secure the testimony.

A party is bound by the allegations made in his application for continuance, whether necessary to have made same or not, which shows the object, purpose, and materiality of the desired testimony, and he can not afterwards be heard to claim that he expected to prove other and additional things.

An application for continuance will be insufficient for any purpose if it shows want of diligence on its face.   Lewis v. Williams, 15 Texas, 47; Williams v. Talbot, 27 Texas, 159; Price v. Lauve, 49 Texas, 74; Baldessore v. Stephanes, 27 Texas, 455; Railway Co. v. Wheat, 68 Texas, 136; Ry. Co. v. Ragsdale, 67 Texas, 24.

2.   The expressions of the agents and employes of appellant in charge of its train at the time of and previous to the wreck and during the reckless running and mismanagement of said train which resulted in the wreck, and made with reference to said reckless running and mismanagement, are the acts and expressions of their principal, part of the *res gestæ,* and admissible.   Tuttle v. Turner, 28 Texas, 759; Hinson v. Walker, 65 Texas, 103; Latham v. Pledger, 11 Texas, 439; McDermit v. R. R. Co., 2 Am. and Eng. R. R. Cases, 85; Pennsylvania v. Rudell, 6 Am. and Eng. R. R. Cases, 30; Sissen v. Railway, 14 Mich., 489.

3.   In reply to the fourth proposition by appellant, appellee submits that under the facts of this case the evidence complained of, of his marital relations, was admissible for the purpose of showing a want of virility; that and remarks of counsel were immaterial, even if the same had been improper, because the jury were confined by proper charges to the consideration of actual damages as stated above.   The remarks of counsel will not be cause for reversal unless it appears manifestly that the verdict was the result of passion or prejudice created thereby.

Appellee in his first amended original petition alleges a complete and permanent paralysis of his sexual organs in addition to other injuries. The court in its charge in chief to the jury uses the following language: "You are further instructed that if you should find for the plaintiff you

are not to consider any evidence, if any such is before you, as to his being a married man and the father of children, for such evidence was not permitted to go to you, if any such there was, for the purpose of augmenting his damages, if any you find, but as a circumstance only upon the question of his loss of virility or injury to his genital organs." Further the court charged the jury, as well as at the instance of appellant, confining the jury to the consideration of actual damages alone, and further instructing them as to what constitutes such actual damages. Willis & Bro. v. Lowry, 66 Texas, 540; Railway Co. v. Witte, 68 Texas, 295; Sinclair v. Stanley, 69 Texas, 718; Barber v. Hutchins, 66 Texas, 319.

HENRY, ASSOCIATE JUSTICE.—Appellee instituted this suit to recover from appellant damages for injuries received in a wreck of its train when he was a passenger on it.

The petition charges that the road was newly constructed and in bad condition, requiring great care in running trains over it; that the train was composed mainly of freight cars loaded with railroad ties and did not have the necessary brakes; that defendant's servants operating the train by gross negligence and carelessness ran it at the rate of fifty miles an hour down a heavy grade approaching a bridge, both the track and the bridge being in bad condition, whereby the entire train was wrecked, causing plaintiff great and permanent injuries, which are fully described. The petition alleges that plaintiff was a married man and of great physical vigor before his injury, but without health or strength afterward, and he is now a physical wreck; that from the day he received his injuries he has suffered physical and mental pains, and that by reason of his said injuries he has been damaged fifty thousand dollars.

Plaintiff by amendment filed at the term at which the case was tried set up the facts of his being a skillful physician, engaged previous to his injury in the practice of his profession and realizing therefrom five thousand dollars per annum, all of which he alleged had been lost to him by reason of his having been utterly disabled from pursuing his profession by reason of his injuries. The defendant made an application for continuance to enable it to procure evidence to disprove these allegations. The application was sufficient, and it ought to have been allowed, except for the fact that plaintiff replied to it by abandoning and striking from his petition all allegations to which the application related, after which the motion to continue was properly overruled. The abandonment of these allegations left the plaintiff's pleading without any averment that he was a physician, or that he had then or ever had any occupation, or that he had suffered damage in any respect from loss of occupation, and without an allegation of pecuniary damage in any respect except as resulting from his impaired physical condition and the mental and bodily pain produced thereby.

In this condition of his pleadings plaintiff was allowed to introduce evidence that he was a physician and skillful and efficient as such, but not to prove the value of his services, and was also allowed to prove that he was not then practicing his profession because he was not able to do so. Other witnesses connected his disability with the injuries for which this suit was brought. This evidence was objected to by defendant on the ground that the only allegations under which it was admissible had been abandoned.

In this connection the court gave the following charges:

"It is not necessary that any witness should have sworn to or expressed any opinion as to the amount of such damage, but the jury may themselves make such estimate from the facts.and circumstances in proof and by considering them in connection with their own knowledge, observation, and experience in the business affairs of life.

"If you find for plaintiff you may take into consideration the nature and kind of his business and the value of his services in conducting the same, the probable effect of his injuries in the future upon his health, his ability to labor and attend his business, and generally any reduction of his power to earn money."

Subsequently at the request of the defendant the court charged the jury as follows: "There is no evidence before you showing any actual pecuniary loss from his business, or that the plaintiff was engaged in any remunerative business whatever prior to his injury, and if you find for plaintiff upon other charges herein given you will exclude from your consideration in estimating the actual damages sustained by him all elements of actual damages except what you may find to be a fair compensation for the physical and mental suffering which the evidence shows to be the direct and proximate result of the injury."

It is quite evident that the charge that the jury might take into consideration the nature and kind of plaintiff's business and the value of his services in conducting the same was an oversight upon the part of the court, and that the purpose of giving the contrary charge at the request of defendant was to correct the error. We would find less difficulty in holding that the error was sufficiently corrected without withdrawing from the jury the objectionable charge, which was the proper thing to do, if the court had not also charged that in estimating the amount of damages it was not necessary that any witness should have sworn to or expressed any opinion as to the amount of such damage, but that they might themselves make such estimate from the facts and circumstances in proof, and by considering them in connection with their own knowledge, observation, and experience in the business affairs of life.

It is true that this charge was in terms limited to "such damages as are charged in the petition," and in the petition none are charged, as we

have said before, except such as resulted from the physical injuries and bodily and mental pain suffered by plaintiff. As so applied we think the charge correct, but at the same time where it is seen that evidence not responsive strictly to the allegations in the petition had been admitted, and as jurors are not skilled in eliminating from the mass of evidence before them such as is strictly responsive to the pleadings, we are not prepared to say or believe that they may not have felt at liberty to apply this charge to the whole case, and thus dispense with the necessity of having the evidence of witnesses as a necessary predicate for any addition to the amount of their verdict on account of the loss of ability of plaintiff to practice and earn money by his profession, or to do other things that a man of his age and former physical vigor, as established by the evidence, can do in the way of maintaining himself.

Except for this complication the contradiction in the charges would be somewhat relieved by the consideration that as no evidence had been admitted of the value of his services the jury could not, even when directed to do so, have included them in estimating the amount of plaintiff's damages. Whether or not these things were estimated by the jury and went to increase the amount of their verdict it is impossible to determine. The objectionable charge not having been withdrawn went with them in their retirement for their consideration as a charge of the court of equal dignity with the other charges. Whether it received equal or more or less consideration than its opposite can not be known. The correct rule is, we think, when contradictory charges are given which may be material to reverse the case unless it is clear that no prejudice has resulted therefrom.

The court charged the jury that "where a railroad car containing passengers is thrown from the track and a passenger who has paid his fare is thereby injured, the presumption is that the accident resulted either from the fact that the track was out of order, or that the train was badly managed, or both combined, and the burden is on the defendant company to show by a preponderence of evidence that it was not negligent in any of these respects."

This was instructing the jury that proof of derailment of the train was equivalent to evidence either that the track was out of order or that the train was badly managed, and was proof of negligence sufficient to authorize a verdict for plaintiff, unless the defendant overcame it by a preponderance of evidence.

The instruction that the facts presumed to exist from proof of the derailment cast upon the defendant the burden of proving want of negligence amounts to a charge that proof of an injury to a passenger occasioned by a derailment of the train on which he is being conveyed is evidence of the carrier's negligence.

If this charge does not in so many words decide for the jury the ques-

tion of negligence, it still does so in effect by charging that such proof devolved upon the defendant the necessity of disproving negligence aris-- ing out of that state of facts. If the proposition be correct that proof of an injury resulting to a passenger from such a cause, unexplained and uncontradicted, would be sufficient evidence for a jury to find against the carrier, it is still incorrect for the court to so declare or charge as a proposition of law. It has been repeatedly decided by this court that the existence of negligence is in such cases as this a question for the jury and not for the court. We do not think that the propositions stated in this charge are correct, either as presumptions of law or fact.

It does not necessarily follow that a car being thrown from the track is caused by the track being out of order, or the train being badly man- aged, or from both causes combined. The same thing may happen from many other causes. It was the province of the jury to find from the evidence what caused the accident and whether the defendant was negligent. In this case the evidence was conflicting both upon the point of the condition of the track and the speed of the train. The facts. that plaintiff was a passenger and that the car in which he was riding was thrown from the track, whereby he was injured, were undisputed. The charge of the court is that plaintiff's evidence upon the conflicting points is aided by a presumption that casts upon the defendant an addi- tional burden of proof.

This charge the appellant complains was upon the weight of evidence. We think the court erred in giving it.

In some States it has been held that the happening of an accident to a passenger makes out a prima facie case and raises a presumption of neg-- ligence, and that the burden is upon the defendant to rebut this pre-- sumption.

Wharton, in his Law of Evidence, says: "Negligence, it has been said, is a presumption which judges will direct jurors to make from the· happening of an accident. No doubt by statute this may be done, as in those States in which legislatures have provided that railroad companies· shall be liable in all cases of firing. But if the question be whether neg- ligence (i. e. a want of due diligence in a particular case) is to be inferred logically from facts which do not indicate negligence, the question an- swers itself. We have in all cases of injury in which negligence is, charged two hypotheses. The first is that the facts do not show negli- gence, in which case negligence can not be inferred. The second is that the facts show negligence, in which case the position before us is equiv-- alent to saying that negligence is to be inferred because negligence is shown."

The Supreme Court of the United States in the case of Transportation Company v. Downer, 11 Wallace, 135, quote with approval from the case of Curtis v. The Rochester and Syracuse Railroad Company, 18 New

York, 543, the doctrine that "the mere fact that a passenger on a railroad car was injured by the train running off a switch was not of itself, without proof of the circumstances under which the accident occurred, presumptive evidence of negligence on the part of the company. The court said that carriers of passengers were not insurers, and that many injuries might occur to those they transported for which they were not responsible; but as railroad companies were bound to keep their roads, carriages, and all apparatus employed in working them free from any defect which the utmost knowledge, skill, and vigilance could discover or prevent, if it appeared that an accident was caused by any deficiency in the road itself, the cars, or any portion of the apparatus belonging to the company and used in connection with its business, a presumption of negligence on the part of those whose duty it was to see that everything was in order immediately arose, it being extremely unlikely that any defect should exist of so hidden a nature that no degree of skill or care could have discovered it. The accident itself irrespective of the circumstances furnished no ground for any presumption one way or the other."

In the case of Heldt v. Webster, 60 Texas, 209, Justice Stayton says: "Any charge as to a presumption arising from a given state of facts, unless in those cases in which the law raises a conclusive presumption in the nature of things, is a charge upon the weight of evidence, and although other parts of the charge given may have been correct such an error will require a reversal of the judgment."

We do not think there was error under the circumstances of this case in admitting evidence that plaintiff had a wife and children, nor in allowing the allusions made to them by plaintiff's counsel in his argument to the jury.

It does not appear that the evidence of the witness Thomas as to the statements of the conductor made after the wreck with regard to the cause of it was objected to when it was given, and not having been, we do not think the charge complained of in the thirteenth assignment was wrong.

It is assigned that the court erred in refusing to give charges Nos. 1, 2, 5, 6, 8, 10, 11, 12, and 14 requested by defendant. None of these charges are set out in the brief of appellant. Nor are the objections to them pointed out. Without undertaking to say that all of them were properly refused we are satisfied some of them were. The objectionable charges ought to be stated in the brief and the specific objections pointed out.

The witness Kingsbury was permitted to testify that "I spoke to the conductor and brakeman about the fast running before the wreck, and at Sublime, where we had breakfast, one of the train men—I think Pruitt, the conductor—warned the engineer not to continue running so fast, remarking that the road was unsafe, and when we reached Sublime,

-where we had breakfast, I heard a train man—I think the conductor—
-warn the engineer about his reckless running over an unsurfaced, unsafe,
and hastily constructed road."

. We do not think the rate of speed at which the train was run previous
to reaching Sublime is one of the issues in this case.    The declarations
of the servants of defendant are not admissible unless made about the
cause of the wreck and at the time and place of its occurrence under
circumstances making them part of the *res gestae.*   We think this evi-
dence ought to have been excluded.

Other errors are assigned, some of them involving questions already
adverted to.   We do not think they require further discussion now,
especially as they may not recur on another trial.

The judgment is reversed and cause remanded.

*Reversed and remanded.*

Delivered March 12, 1889.