GULF, T. & W. RY. CO. v. CULVER.

(No. 622.)

(Court of Civil Appeals of Texas. Amarillo. May 30, 1914.)

1. APPEAL AND ERROR (§ 499*)—QUESTIONS REVIEWABLE—RULINGS ON INSTRUCTIONS—BILL OF EXCEPTIONS — STATUTORY PROVISIONS.

Under Rev. St. 1911, arts. 1970, 1971, 1973, 1974, 2061, as amended by Acts 33d Leg. c. 59, and art. 1972, providing for the submission of instructions to counsel and the presentation of objections before reading to the jury, and declaring that objections not so made shall be waived, and that either party must present to the judge in writing such instructions as he desires to be given, and, when instructions asked are refused, the judge shall note which are given and which refused, and the ruling in the giving, refusing, or qualifying of instructions shall be regarded as approved, unless excepted to, when considered in connection with articles 2058, 2059, 2062, authorizing either party dissatisfied with any ruling of the court to except and embody the same in a bill of exceptions, etc., objections to the general charge must be presented before the same is read to the jury, and that fact must be shown by a bill of exceptions, and bills of exception to the refusal of several requested special charges must show that the charges were presented before the general charge was read, or the rulings cannot be considered on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2295–2298; Dec. Dig. § 499.*]

2. EVIDENCE (§ 271*)—ADMISSIBILITY—SELF-SERVING DECLARATIONS.

A statement by plaintiff, suing for a personal injury, made several hours after the accident to a night watchman in explanation of his having a lamp burning, to the effect that he had been injured by an accident, and that his injuries were paining him, and he kept the lamp burning to apply a liniment, is inadmissible as self-serving.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1068–1079, 1081–1104; Dec. Dig. § 271.*]

3. EVIDENCE (§ 127*)—ADMISSIBILITY—SELF-SERVING DECLARATIONS.

One suing for a personal injury may not testify to statements made several hours after an injury to third persons as to his injuries and pain suffered in consequence thereof.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 377–382; Dec. Dig. § 127.*]

4. EVIDENCE (§ 123*) — DECLARATIONS — RES GESTÆ.

A statement by a foreman of a section railroad crew, made two or three hours after an injury, to a member of the crew, is not a part of the res gestæ, and is inadmissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 351–368; Dec. Dig. § 123.*]

5. EVIDENCE (§ 271*)—DECLARATIONS—SELF-SERVING DECLARATIONS.

The testimony of a witness that plaintiff, suing a railroad company for a personal injury, told her a few days after the accident that he was hurt on the railroad was inadmissible as self-serving.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1068–1079, 1081–1104; Dec. Dig. § 271.*]

6. MASTER AND SERVANT (§ 270*)—INJURY TO SERVANT—EVIDENCE—ADMISSIBILITY.

In an action for injuries to a section hand by falling from a hand car by the breaking of a handle bar, the testimony of a witness that, if he was going to make a handle bar, he would not make it out of wood like that out of which was made the handle bar which was broken in the accident, was not admissible on the issue of whether the employer used ordinary care in furnishing a suitable handle bar.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 913–927, 932; Dec. Dig. § 270.*]

7. TRIAL (§ 120*) — ARGUMENT OF COUNSEL — IMPROPER ARGUMENT.

Though counsel in his argument may draw deductions from the facts and present them to the jury, he cannot charge that the adverse party has induced witnesses to give perjured testimony, where there is nothing to show it in the record, beyond the mere fact that the adverse party endeavored to secure the attendance of witnesses necessary to maintain his case, or to hunt up persons familiar with the facts in the case.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 285–287; Dec. Dig. § 120.*]

8. TRIAL (§ 125*)—ARGUMENT OF COUNSEL—IMPROPER ARGUMENT.

The argument of counsel for plaintiff, suing a railroad company for a personal injury received while employed as a section hand, that plaintiff was poor, and that the railroad company had access, not only to its own books, but to the books of other railroads, to ascertain the location of other men who were working with plaintiff at the time of the injury, and that such men had the privilege of transportation over other roads, was improper.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 303–307; Dec. Dig. § 125.*]

9. TRIAL (§ 121*)—ARGUMENT OF COUNSEL—IMPROPER ARGUMENT.

Where the district attorney was counsel for plaintiff in a civil action, the argument of the district attorney that a witness for defendant had committed perjury, and that he could convict him of that offense, was improper.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 294–298, 300; Dec. Dig. § 121.*]

10. APPEAL AND ERROR (§ 1060*)—PREJUDICIAL ERROR—ARGUMENT OF COUNSEL.

The argument of counsel for plaintiff that the refusal of the court to direct a verdict for defendant showed that the court thought that plaintiff had a case, and that the jury ought to find for him, was prejudicial to defendant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4135; Dec. Dig. § 1060.*]

Appeal from District Court, Baylor County; Jo. A. P. Dickson, Judge.

Action by G. L. Culver against the Gulf, Texas & Western Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Ben B. Cain, of Dallas, Sporer & McClure, of Jacksboro, and Joe A. Wheat, of Seymour, for appellant. Browne & Hawkins, of Paducah, and I. O. Newton, of Seymour, for appellee.

HUFF, C. J. G. L. Culver, appellee, brought suit against the Gulf, Texas & Western Railway Company, appellant, for damages, personal injury, alleged to have been sustained by appellee while in the employment of appellant as a section hand, and while at work on appellant's roadway. He alleges that he fell from a hand car while it was being operated by himself and others,

which fall was occasioned by the breaking of a handle bar near the socket, and that he fell backward from the hand car, striking the cross-ties on his back and side, alleging serious and permanent injuries to his side and back, both external and internal. The negligence alleged is that appellant failed to furnish appellee with a safe place to work, and with safe appliances with which to labor, and in failing to exercise due and reasonable care to have the handle bar inspected; that the handle bar was made of inferior wood, brittle, and unsuitable for the use for which it was employed. The appellant answered by general denial, contributory negligence, and alleged that, if appellee was injured, his injuries were trivial, and would have been of no consequence if appellee had taken proper care of himself; that he failed to call in a physician or use medical remedies necessary to heal his injuries; that he resumed work the next morning after the fall, etc., and, if there were any such injuries as alleged, they were the result of his own negligence. The trial before a jury resulted in a verdict and judgment for $2,000 in favor of appellee, from which appellant appeals.

[1] Appellant's assignments, from 2 to 19, inclusive, are based upon the court's charge and the failure of the court to give certain special instructions requested by appellant. We have concluded under the law, with reference to exceptions to the charge of the court and the refusal of special instructions, as amended by the Thirty-Third Legislature, p. 113, that we cannot consider the assignments with reference to the charge of the court and the refusal of certain special charges. These assignments will therefore be overruled.

The appellant will be considered to have waived the error assigned in the charge of the court, and the refusal of special charges and the action of the court thereon will be considered approved by appellant.

We find in this record a paper filed by the clerk of the trial court designated, "Defendant's exceptions and objections to the court's charge." There are 10 paragraphs of this instrument, concluding, "Respectfully submitted before the charge was read to the jury, with request that same be corrected," signed by counsel for appellant. We find no bill of exceptions taken to the action of the court in refusing to correct the charge in the particulars pointed out. There is no order or any other method entered of record showing an exception. There is nothing in the record to show that these objections were presented to the court before the charge was read to the jury, except the statement by attorneys for appellant, and the conclusion of the objections, as above set out. At the end of each specially requested charge, we find the following:

"Which special charge No. 2 was by defendant asked to be given by the court in charge to the jury, and was by the court refused, which refusal was excepted to by defendants, and now here tenders his bill of exceptions and asks that it be made a part of the record in this cause. Jo. A. P. Dickson, Judge of the 50th Judicial District of Texas. Refused, Jo. A. P. Dickson, Judge Presiding."

It will be observed that the bill does not show that the charges were presented to the trial judge before the main charge was prepared or read to the jury, nor does it show that it was presented to opposite counsel for their examination. From aught that appears, the charge may have been presented after the court read its charge to the jury. From the record before us, we are in doubt whether the judge approved the bill or refused it. It may be the word "Refused" is intended to indicate that the charge was refused, and not the bill of exceptions. We are left to conjecture, and we are very much in doubt just what is the meaning and purpose of the refusal.

The act of the Thirty-Third Legislature, relating to the time and manner of submitting instructions to the jury, provides (article 1970) that the preparation and delivery of a written charge to the jury on the law of the case shall be delivered by the judge, "in the manner and subject to the restrictions hereinafter provided."

Article 1971: "After the evidence has been concluded the charge shall be submitted to the respective parties or their attorneys for inspection and a reasonable time given them in which to examine it and present objections thereto, which objections shall in every instance be presented to the court before the charge is read to the jury and all objections not so made and presented shall be considered as waived."

Article 1973: "Either party may present" written charges which he desires given. The judge may give the charge or a part thereof, or refuse them, and he shall read such part as given "provided, such instructions shall be prepared and presented to the court and submitted to opposing counsel for examination and objection within a reasonable time after the charge is given to the parties or their attorneys for examination."

Under article 1974, the court shall note which charge is given and which refused, and such charges shall be filed with the clerk and constitute a part of the record of the court, subject to revision for error. This last article (1974) stands as it did before the amendment, with the significant omission of the following words:

"Without the necessity of taking a bill of exception thereto."

Article 1972 does not appear to have been amended, but is left as it was originally, which provides that the court's charge shall be filed as part of the record, and—

"shall be regarded as excepted to and subject to revision for errors therein, without the necessity of taking a bill of exceptions thereto."

The Thirty-Third Legislature amended article 2061, which now reads:

"The ruling of the court in giving, refusing or qualifying of instructions to the jury, shall be regarded as approved unless excepted to as provided for in the foregoing articles."

Article 2061 is part of chapter 19, R. S., relating to bills of exceptions and statement of

facts. This article, before its amendment, provided that the ruling of the court in giving and refusing or qualifying instructions "shall be regarded as excepted to in all cases." The articles preceding article 2061 provide when and how bills of exception shall be taken. Article 2058 provides that whenever, in the progress of the cause, either party is dissatisfied with any ruling, opinion, or other action of the court, "he may except and be granted time to embody the same in a bill of exceptions." Article 2059 requires no particular form of words in drafting a bill of exceptions. Article 2061 provides that the bill may refer to the statement of facts in certain instances.

"2062. Where the ruling or other action of the court appears otherwise of record, no bill of exceptions shall be necessary to preserve an exception thereto."

In the giving of the charge to the jury and the refusing requested instructions, what is the manner and restrictions provided by law? The court prepares the charge and presents it to the parties; they have time to make objections before it is read to the jury. If there are no objections presented, they are considered waived. The question, then, is: How are these objections to be preserved in the record? . Clearly the law is not now as it was before the amendment. This court, speaking through Judge Hendricks, held that it is—

"necessary that the record, in a proper manner, shall exhibit the action of the court in refusing the objections to the general charge, when objections are made, and, when refused or overruled by the trial judge, the exceptions of the litigant shall be preserved and incorporated into the record in an appropriate manner." Insurance Co. v. Rhoderick, 164 S. W. 1067; Railway Co. v. Galloway, 165 S. W. 546.

We believe there is no other deduction to be drawn from the amendments above referred to. This interpretation is supported, we think, from an examination of the statutes, keeping in view the old law, the evil and the remedy; and also upon the authority of our Supreme Court, as well as that of courts in other jurisdictions having statutes similar to ours. In the case of Railway v. Cody, 92 Tex. 632, 51 S. W. 329, in passing on a request to submit the case upon special issues, the trial court simply marked the request, "Refused." Our Supreme Court said:

"We are of opinion that a party who desires to review the action of the court in refusing a submission upon special issue should except to the ruling of the court and take a bill of exceptions thereto."

By the law as it now stands, objections must be made to the charge of the court before it is read to the jury, or such exceptions are waived. This court cannot know when the objections were made, whether before or after the charge to the jury, or in fact whether ever brought to the attention of the trial court, unless in some way the record shall show that fact. A mere paper found in the record signed by the attorneys is not evidence of that fact. If there should appear an exception in the answer to the petition or an application for a continuance, and nothing else in the record to show the action of the court thereon, it would not, we take it, be contended that the presumption would be that the court acted on such exception or motion for continuance. It, as we understand the rule, has always been held that the record must show affirmatively the action taken by the court thereon, or the presumption is they were waived. The Indiana Supreme Court, under a statute somewhat like ours, as we gather it from the opinions of that court, held, in the case of Puett v. Beard, 86 Ind. 104–107:

"Complaint is made by the appellants of the refusal to give an instruction asked by them. Counsel for appellee stoutly maintain that the complaint is unavailing, for the reason that the record does not show when the instruction was asked, and contend that, for aught that appears, it was not asked at the proper time. The record sustains the claim that it does not appear that the instruction was asked at a proper time, and the law supports the contention that, unless it does affirmatively appear that the request was made in due season, the ruling cannot be successfully assigned for error. This we say because one complaining of a ruling must, in order to secure a reversal, affirmatively show that he placed himself in an attitude to rightfully ask that which the court refused him. If this is not done, the presumption of regularity, which always attends the proceedings of the trial court, in the absence of a contrary showing, will require the appellate court to assume that the party did not do that which the law required him to do in order to entitle him to the ruling asked. It is a long-settled rule that instructions must be asked before the argument begins, or the court may rightfully refuse them." German Fire Insurance Co. v. Columbia, etc., 15 Ind. App. 623, 43 N. E. 41, 46; Craig v. State, 127 Ind. 286, 26 N. E. 842.

"Where a special request is a condition precedent to the right to demand a ruling, it must appear by the record to have been made in due season and in the appropriate mode. A party cannot successfully complain of a ruling, unless the record regularly shows that he did all that the law required of him to do in order to make it the duty of the court to give the particular decision. If a party has been in fault in this respect, he will not be aided on appeal." App. Proc. (Elliott) § 731.

The appellant having no bill in this case showing that the objections were presented to the general charge of the court before the same was read to the jury, and the bills of exceptions to the several requested special charges failing to show that these special charges were presented to the court and to the opposite counsel before the general charge was read to the jury, we think does not affirmatively show error on the part of the court in rejecting the special charges, or in refusing to sustain the objections to the general charge. For the reason above assigned, we overrule assignments Nos. 2 to 19, inclusive.

[2] The twentieth assignment complains of the action of the court in admitting the statement testified to by appellee Culver to the night watchman at Paducah. The court,

in qualifying the bill, sets out the evidence objected to as follows:

"The witness testified that he had kept a light burning in his room, and had to apply liniment to his injuries when the same would pain him, and that one night when he was suffering with his injured side, and had his lamp burning, the night watchman came to his room and asked why he had the lamp burning, and the witness answered that he had been injured by an accident on the railroad, and his injuries were then paining him, and he kept the lamp burning to apply his liniment."

The appellant objected to this testimony because the evidence was a self-serving declaration, and was not statements sought to be detailed by the night watchman, but by the plaintiff himself, and the statement of why he had a light burning was hearsay and incompetent testimony.

[3] The testimony of the witness as to what he told the night watchman we do not think admissible. It was not part of the res gestæ; it was not an expression of present pain or suffering. The physical condition was not then speaking through the party, but the witness was talking about his injuries and suffering. It was an explanation in answer to a question by the night watchman. From the evidence admitted, it does not appear to be the involuntary expression of present pain, but was only an explanation of why the light was kept burning in answer to an inquiry. This testimony was clearly self-serving. Jones on Evidence, §§ 344, 345; Railway Co. v. Moore, 69 Tex. 157, 6 S. W. 631.

[4] In addition to what we have said above, the declaration was that of the party to another, sworn to by himself. We do not think the party should show his injuries by swearing to the declaration he had made to others. By such a rule he could tell others about his injuries, and how he suffered, and then get on the stand and swear what he told others and thereby prove he had suffered, without ever having subjected himself to the pains and penalty of perjury. The statement that he was injured on the railroad was not admissible, was not res gestæ in any sense of the word, and was material, in that it sought to establish a controverted fact, to wit: That he was injured on the railroad. McCowen v. Railway Co., 73 S. W. 46; Railway Co. v. Gill, 55 S. W. 386; City of Galveston v. Barbour, 62 Tex. 172, 50 Am. Rep. 519.

[5] The twenty-first assignment complains of the action of the court in permitting appellee to testify:

"That evening the section foreman made a statement, and he said that, if any of us made any statement about this accident, he would fire the last one of us. He said for us to keep quiet; there was about nine men on that hand car, and about sixteen men on the job. He had two cars."

The objections urged are that the statement was not res gestæ; that, if made by the section foreman, it could not bind the appellant, and was out of the line of his duties as section foreman, and could throw no light on the accident; and that it was hearsay, incompetent, and prejudicial to the rights of defendant. The trial court qualified the bill as follows:

"Approved with the following qualification: The statement in the opinion of the court was a part of the res gestæ; it was also admissible as impeachment of the witness A. H. Barton, and the proper predicate had been laid."

A. H. Barton was foreman on the section upon which appellee was at work, and had charge of the men and car from which appellee fell. The fall from the hand car occurred, according to appellee, about 11 o'clock in the morning, as the foreman and his men were going in to dinner. He testified that after the fall he got back upon the car and went to dinner. That evening the purported statement was made by the foreman. From the statement of facts, we infer the declaration was made after they went back to work that afternoon. Appellee says:

"After the accident I went to dinner, and that evening went back out to try to work."

The appellee was the first witness on the stand and made the statement above objected to upon his direct examination. Barton's, the foreman's, deposition was taken, and, in answer to the cross-interrogatory by appellee, denied having made the statement attributed to him by appellee. We are unable to agree with the learned trial judge that the statement by the foreman was part of the res gestæ. It is evident, if the statement was made, that it was some two or three hours after the accident. It was not part of the accident or related to the circumstances immediately surrounding it, and is in no way explanatory of the accident. It was an act or declaration made by the foreman, for which the appellant is not responsible.

"To render the declarations of an agent admissible against the principal, such declaration must have been made concerning an act within the scope of the authority of the act, and at the time the act was being performed by the agent. If the declaration be made before or after the act was done, it is not part of the res gestæ, and therefore not admissible." Waggoner v. Snody, 98 Tex. 512, 85 S. W. 1134; Railway Co. v. Robinson, 73 Tex. 277, 11 S. W. 327.

In discussing the declaration of an engineer after the accident, Judge Harlan, of the United States Supreme Court, in the case of Railway Co. v. O'Brien, 119 U. S. 99, 7 Sup. Ct. 118, 30 L. Ed. 299, said:

"His declaration, after the accident had become a complete fact, and when he was not performing the duties of an engineer, * * * was not explanatory of anything in which he was then engaged. It did not accompany the act from which the injuries in question arose."

The record in this case shows that this statement was introduced before Barton testified or his deposition was offered. To impeach the evidence of Barton, he must have testified to the fact sought to be impeached. If, as we hold, this declaration was not res gestæ, then it was immaterial in so far as appellant was concerned. It did not in any

way establish or prove liability on the part of appellant. The agent had no right to make any such statement, and, if he did so, he made it on his own personal responsibility.

"The testimony was collateral to the main issue, and was not subject to impeachment." Texas Co. v. Strange, 154 S. W. 327.

In that case it is also held:

"The statement of Dodge, being subsequent to the injury, and not while the transaction was pending, and a mere opinion, was not binding on the appellant, therefore illegal, and should not have been admitted," citing Railway Co. v. Sherwood, 84 Tex. 125, 19 S. W. 455, 17 L. R. A. 643; City of Austin v. Forbis, 99 Tex. 234, 89 S. W. 405.

[6, 7] The twenty-second assignment is sustained. The testimony of Mrs. M. G. Culver to the effect that appellee told her a few days after the accident that he was hurt on the railroad we do not think was admissible, for the reasons heretofore given in considering assignment No. 20. We do not think the evidence of Roe Graham should have been admitted. The testimony is to the effect that, if he was going to make a handle bar, he would not make it out of wood like that out of which was made the handle bar exhibited as the one which was broken in the accident. What the witness would use himself was not admissible upon the issue before the jury, and did not, in any way, elucidate the question as to whether appellant had used ordinary care in furnishing a suitable handle bar. Assignment No. 23 will therefore be sustained.

[8] Assignments 24, 25, 26, and 27 relate to the argument of counsel for appellee, made before the jury. R. D. Browne, of counsel for appellee, used the following argument:

"Gentlemen of the Jury: This railroad company has brought a lot of perjured testimony before you in this case with which to defeat the rights of this poor boy. The witness Claude Sartin has been induced to swear falsely in this case. When he came on the stand I looked at him. He dropped his eyes. I felt sorry for him, for I knew that the defendant had corrupted him and brought him here to swear to a falsehood, and he did it."

Again he said:

"The man who Bock was sending out to find these boys, Garrison, did not take the stand, and I say that he had talked to every one of those boys, and he did not take the stand and say that he did not talk to every one of them. I say I can deduct from that, gentlemen of the jury, that he talked to the others, and the witnesses Barton and Sartin they have brought here to perjure themselves. That is the reason they have not got those other boys on the stand here to-day to testify—is that they did not exactly suit Mr. Garrison when he went over and found them. He could not talk them over and make them do as he had made Sartin and Barton do. He could not make them agree to perjure themselves to defeat the rights of the boy they had seen fall from the car. That is the reason, gentlemen of the jury, in my judgment, they did not come here to-day, or did not take the depositions of these other boys. Not only have they their own books to look over to see if they are working on railroads, but they have books of all railroads in the country; not only have they their own roads to carry them, but they have the trains of all the roads to carry them."

Mr. Newton, also of counsel for appellee, and district attorney for that district, used the following argument:

"Gentlemen of the Jury: When the defendant's witness A. H. Barton testified that that handle bar in that car was made of bois d' arc, he committed perjury, and, if I was prosecuting the said A. H. Barton before a Baylor county jury, I would convict him and send him to the penitentiary for ten years."

Again he said:

"Gentlemen of the Jury: Sporer, Ben Cain, and Joe Wheat have said that this evidence is not sufficient to make a case, and they have asked the court to instruct you to return a verdict for the defendant, and the court refused to do it, because the court knew that it was a case, and it shows that the court thought that the plaintiff had a case, and you ought, therefore, to find for the plaintiff."

We regard some of this argument as inflammatory, and not justified by the facts in the case. While counsel may draw deductions from the facts and present them to the jury as such, we think they should be careful not to charge that the opposite party had induced others to swear falsely. Before a charge of that kind is made before a jury, we think there should be something else in the record than the mere fact that the party endeavored to secure the attendance of the witnesses necessary to maintain their case, or to hunt up the parties who ought to be and are familiar with the facts in the case. It is frequently true that a party is unable to get the attendance of witnesses without paying them for their time and making arrangements for their expenses, and from the fact that the witness which they secure may not agree with the testimony of the other party, it does not necessarily follow, nor do we believe warrant the conclusion, that the party so summoning the witness is guilty of subornation of perjury. At any rate, we believe that a better practice would be for attorneys to refrain from arguments of that kind.

[9] Counsel also referred to the fact that this is a poor boy, and that the railroad had access, not only to its own books, but to the books of other railways, for the purpose of ascertaining the location or whereabouts of other men who were working with appellee on the railroad at the time of his injury, and that they had the privilege of transportation over other roads. This may be a fact; but it would not be admissible as testimony, and we do not think admissible as an argument before a jury.

[10] The assertion of Mr. Newton, as district attorney, that he would be able to convict Mr. Barton of perjury before a jury of that county may be true or not; the fact that he has such confidence in his ability to do so or in the integrity of the jurors of that county is but the expression of his opinion, based partly upon his knowledge of the people of that county. We hardly think that such is a legitimate deduction from the evi-

dence in this case, such as would elucidate any issue then to be tried before the jury. The fact that Mr. Barton may have been contradicted by other testimony, and by other witnesses, we do not believe warranted the district attorney in asserting that in his opinion he could convict him of perjury on that account. The jury did not try that case upon any attorney's opinion as to what he might do before some other jury upon some other issue.

We also think the argument of Mr. Newton to the effect that the court had refused to instruct a verdict for appellant showed that the court thought that the plaintiff had a case, and that the jury ought therefore to find for the plaintiff. If the jury accepted the statement of the attorney to the effect that the court is of the opinion that the plaintiff had a case, it must necessarily have had great weight with the jury, and we do not think such an argument is legitimate or permissible, and the action of the jury should not be influenced or sought to be influenced by the opinion that the trial court may have upon the facts before them. They are the exclusive judges of the facts, and not the court, and the fact that the court had refused to instruct a verdict for the plaintiff did not show that the trial court believed the plaintiff was entitled to recover from the facts then proven. It simply showed that it was his purpose only to let the jury pass upon the facts, and counsel should not have made that statement, in our opinion, and we believe the argument was calculated to influence the jury to the prejudice of the appellant's rights, and was calculated to obtain a verdict upon the argument of counsel, rather than upon the testimony in the case.

We overrule assignment No. 1 and the other assignments with reference to the sufficiency of the testimony. We think the court properly submitted the question of negligence to the jury; that is, there is sufficient evidence in the case which, in our opinion, required the court to submit the case to the jury for their finding.

For the reasons heretofore set out in this opinion, the case is reversed and remanded.