## TEXAS & P. RY. CO. v. GIBSON.
### (No. 699–4622.)

(Commission of Appeals of Texas, Section B. Dec. 1, 1926.)

1. **Master and servant ⚖══286(31)—Whether trainmen should have kept lookout and warned bridge tender held for jury.**

In action for death of bridge tender struck by car and engine engaged in switching, whether operators of train should have kept lookout for deceased, and signaled their approach as warning *held* for jury.

2. **Courts ⚖══97(5)—Federal decisions control in action under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665).**

In action under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) for injury occurring in interstate commerce, federal decisions are controlling.

3. **Master and servant ⚖══288(1)—Whether bridge tender assumed risk of negligence of trainmen held for jury.**

In action for death of bridge tender struck by car and engine engaged in switching, whether deceased assumed risk of negligence, causing his death, *held* for jury.

4. **Trial ⚖══296(1)—Erroneous special charge is not corrected by proper main charge.**

That main charge was correct statement of law would not correct erroneous special charge given jury.

5. **Appeal and error ⚖══882(12)—Giving of erroneous special charge, in conflict with general charge, is not grounds for reversal on behalf of party requesting erroneous charge.**

Case submitted on general charge will not be reversed on behalf of party in whose favor an erroneous special charge was given at his own request, where verdict returned could have been made, though effect was given to conflicting charges; error being invited, and no prejudice resulting.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Suit by Barrett Gibson administrator of the estate of S. L. Jones, deceased, against the Texas &. Pacific Railway Company. Judgment for plaintiff was affirmed by the Court of Civil Appeals (281 S. W. 652), and defendant brings error. Affirmed.

F. H. Prendergast, Geo. Prendergast, and Bibb & Caven, all of Marshall, for plaintiff in error.

S. P. Jones, of Marshall, Barret Gibson, of Fort Worth, and P. G. Henderson, of Jefferson, for defendant in error.

POWELL, P. J. The Court of Civil Appeals, so far as it undertakes to do so, accurately states this case as follows:

"Appellant was a common carrier engaged in interstate commerce December 11, 1923, when S. L. Jones, employed by it in such commerce, was run over and killed by an engine and cars then being used in switching operations at and near a point where appellant maintained a drawbridge over a bayou at Plaquemine, La. On the theory that Jones' death was due to negligence on the part of employees of appellant in charge of said engine and cars, in that they failed to keep a lookout for Jones during said switching operations, and failed to warn him of the movement of the engine and cars at the time same ran over and killed him, this suit for damages was prosecuted by appellee (as the administrator of Jones' estate) for the benefit of Jones' sister, a widow, and her minor daughter, alleged to be wholly dependent upon him.

"It appeared from testimony heard at the trial that the bridge referred to was about 100 feet long. It was in two sections, and was described by a witness as 'a jackknife bridge, which opened up in the middle and didn't turn.' Appellant's main line track and a side track, parallel with, and about 8 feet south of, said main line track, ran east and west where they crossed the bridge. Three spur tracks to a lumber shed east of the bridge and south of said side track were connected to the side track by switches; the switch farthest west being about 115 feet east of the bridge. At about 8 o'clock of the morning of the accident employees of appellant in charge of a west-bound freight-train, consisting of an engine and 75 or 80 cars, stopped on the main line track a short distance east of the bridge, and the men in charge thereof signalled to ascertain if the bridge was adjusted for use by the train in passing over the bayou. Jones was, and for about 20 years had been, the tender of the bridge. As such it was his duty to answer the signal. He did so from a point on the bridge where he was standing, advising the trainmen that the bridge was adjusted for such use. Thereupon the train moved west on the main line track and passed over the bridge at a speed of about 6 miles per hour. While the train was so passing, the engine used in switching cars on the side and spur tracks pushed a car west on the side track to a point on the bridge, and then back east to the main line track. Directly thereafter Jones was found dead on the side track. His head had been severed from his body, and was lying on the ground 8 or more feet east of the east end of the bridge. His body was on the bridge, a short distance from the east end thereof. At the time of the accident the switching was being done in the way it had been the practice to do it; that is, the engine and cars were moved west on the side track to and onto the bridge and east to and onto the main and spur tracks, as was thought to be necessary, without a signal from the deceased to do so, and without keeping a lookout for him, or in any way warning him of the movements. None of the witnesses saw the accident. When Johnson, the engineer on the west-bound freight train, last saw deceased, he was on the bridge signalling him (Johnson) that the bridge was adjusted for the train to pass on it. When Hay, the conductor of an east-bound freight train, last saw deceased, he had given the signal to Johnson, and was standing 50 or 60 feet east of the bridge on the side track; and, when Giardince, fireman on the engine pushing the car which (it circumstantially appeared) ran

over and killed deceased, last saw him, he had given the signal to Johnson, and was walking south from the main line track, and had reached the side track on which the engine was pushing the car toward the bridge. Giardince said that said engine and car at that time were about 1,000 feet east of the bridge. Marks on the ground east of the bridge, where deceased's head was found, indicated that he was struck by the car at that point, and blood and other marks indicated that his body was dragged from that point to the point where it was found on the bridge. The appeal is from a judgment, based on the verdict of a jury, in appellee's favor against appellant for the sum of $7,000."

In rendering its opinion in the case, that court speaks, in part, as follows:

"On the theory that the testimony did not warrant a finding that it was guilty of actionable negligence, and demanded a finding that the deceased was guilty of negligence which 'was the direct cause of his death,' appellant requested the trial court to instruct the jury to return a verdict in its favor, and complains here because the court refused to comply with its request.

"If appellant was guilty of negligence as charged against it, the fact, if it was a fact, that deceased also was guilty of negligence which was a contributing cause of the accident, was not a reason why appellee should have been denied a recovery; for the only effect of such negligence on the part of the deceased would have been to diminish the amount appellee was entitled to recover. [8] U. S. Comp. St. § 8659.

"The debatable question, if there is one, involved in the contention, is as to whether there was testimony raising an issue as to whether employees of appellant in charge of the engine used in the switching operations were guilty of negligence in the respects charged against them in appellee's petition. That said employees did not keep a lookout for the deceased, and did not warn him that the engine and cars were approaching the bridge on the side track, appeared without dispute in the testimony. Did they thereby violate a duty they owed the deceased? We think the jury had a right to say they did."

The final conclusion by the Court of Civil Appeals was that the judgment of the district court should be affirmed, and it was so ordered. See 281 S. W. 652.

[1] There are a few other undisputed facts in the record which may have some bearing upon the case. For instance, the local freight train which circumstantially ran over and killed Jones had come in from the west, and had been busily engaged in its switching activities in the yards for about an hour before the accident. Again, it is quite evident that this drawbridge was essentially a dangerous appliance. In performing his duties, Jones was required to clamp down the bridge when he was preparing it for the passing of trains over it. When performing his duties, his position was more or less necessarily precarious. He could not be in a very safe position. He owed duties to the public who traveled in boats under the bridge as well as to the passing trains. When he was killed, he was near the bridge, and it is not clear that he may not have been performing some of his duties as bridge tender at that time. Again, the fireman on the switch engine which presumably killed him saw him go behind the oncoming box car in a place of danger. He did not see him pass out of that danger zone. The fireman was, when he last saw him alive, only a few hundred feet from him. Both trains were apparently moving toward and over the bridge at the same time. Under all the facts in this case, we cannot say, as a matter of law, that the operatives of the train owed no duty to Jones just before killing him. It was a question for the jury as to whether or not these employees should have kept a lookout for him and signaled their approach to warn him thereof.

[2] We deem it unnecessary to go any further into this question. The Court of Civil Appeals has written rather fully on this point. As stated by that court, the Texas decisions certainly make this case one for the jury on this point. It must be remembered that this is an action under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) for an injury occurring in interstate commerce. Consequently, under the federal decisions, as well as our own, the former are controlling. Judge Stayton, speaking for this court, went into this question very thoroughly in the case of Sears v. Texas & N. O. R. Co., 266 S. W. 400. The Court of Civil Appeals in the instant case gave effect to this rule of law. But neither that court nor we have found a federal decision on a state of facts just like this where it was held that no such duty was owing by the company to one situated as Jones was.

[3] Nor do we think it can be said, under the facts in this record, that, as a matter of law, Jones assumed the risk of negligence which caused his death. The record does not show that Jones knew this switch train would run him down when at least one of its operatives knew he was located where he was, without warning him. In other words, the proof does not show that the train crew had been doing just this kind of thing in the past. The record does not show that this exact situation had ever confronted the switch trains theretofore.

[4] We have carefully examined the application, and think no reversible error is shown. We shall refer to only one other contention. It is urged that this case should be reversed because there was a conflict between the third paragraph of the main charge of the trial court and one of the special charges. This case was submitted upon a general charge. As shown in the opinion of the Court of Civil Appeals, there was a conflict. In the general charge of the court, the jury was permitted to say whether or not the employees operating the train were negligent in

not keeping a lookout for Jones or warning him. On the other hand, in the special charge, given at the request of the railway company, the jury was told that the engineer, one of the employees, under the facts of this case, owed no such duty to Jones. As we have already indicated, we think this special charge was erroneous. As we view the law, it was for the jury to say whether or not the engineer, along with all other employees, owed Jones the duty pleaded; and, had the verdict of the jury been against Jones, a reversal would follow. The mere fact that the main charge was a correct statement of the law would not correct the erroneous special charge given the jury. This is the effect of our own Supreme Court decisions. See Baker v. Ashe, 80 Tex. 357, 16 S. W. 36; Gonzales v. Adoue & Lobit, 94 Tex. 125, 58 S. W. 951; San Antonio & A. P. Railway Co. v. Robinson, 73 Tex. 277, 11 S. W. 327. In the latter case the court said:

"The correct rule is, we think, when contradictory charges are given which may be material to reverse the case unless it is clear that no prejudice has resulted therefrom."

[5] But we have found no decision in this state which says that a case should be reversed on behalf of a party in whose favor an erroneous charge was given at his own request. On the contrary, we find several decisions to the opposite effect. Under such circumstances, it has been held that no reversal could be had. There are two underlying reasons for such a rule. In the first place, one will not ordinarily be permitted to claim the benefit of an error he invited. In the second place, no possible prejudice could result to one in whose favor an erroneous charge was given the jury. The Court of Civil Appeals, in the case at bar, held this conflict in charges not to be reversible error. To like effect are the decisions of Judge Neill for the San Antonio Court of Civil Appeals in the cases of Gooch v. Addison, 13 Tex. Civ. App. 76, 35 S. W. 83, and R. R. Co. v. Parish, 18 Tex. Civ. App. 130, 43 S. W. 1066; also of Chief Justice Key for the Austin Court of Civil Appeals in the case of Missouri, K. & T. R. Co. v. Withers, 167 S. W. 5; likewise of Justice Boyce for the Amarillo Court of Civil Appeals in the case of Ferguson v. Johnson, 205 S. W. 512. We have found no Court of Civil Appeals decision to the contrary. Our

Supreme Court apparently has never had this exact question before it, unless it did when it refused a writ of error in the Gooch Case, supra.

Furthermore, the Texas courts are in line with other jurisdictions. On page 1605 of 38 Cyc. it is stated that "the giving of contradictory instructions is ordinarily held ground for reversal." But in that same paragraph the author, on page 1607, goes on to say:

"A well-defined exception to the general rule exists where the inconsistency or conflict in the instructions is caused by error in the instructions favorable to the appellant or plaintiff in error. In such case, the error being in his favor, he cannot be heard to complain."

The author cites decisions from several states supporting the text.

It should be stated, in this connection, that we do not have before us a case where the erroneous charge was a peremptory instruction, and one which would have been violated by the verdict returned. Where a verdict is returned by a jury which necessarily violated any portion of the charge of the court, such action might amount to misconduct of such a nature as to require a reversal in any event. We are not sure but that the very integrity of trials, in such an extreme case, would require a reversal. We do not pass upon this question, because no such situation is presented. We are merely leaving it open for determination when it is presented. In this case, the jury could have returned the verdict it did return, even though it gave effect to these conflicting charges. The jury could have decided that the company was negligent because the fireman and other employees did not discharge their duty, even though, under the charge of the court, they left the engineer's failure of duty out of consideration. It was the fireman who last saw the deceased before the accident, and not the engineer.

In view of the nature of the conflicting charges here presented, we are of the view that the Court of Civil Appeals correctly decided that no reversal should be had by reason thereof.

We recommend that the judgments of the district court and Court of Civil Appeals be affirmed.

CURETON, C. J. Judgments of the Court of Civil Appeals and district court both affirmed.